STATE of Tennessee

v.

Lionel LINDSEY.

Court of Criminal Appeals of Tennessee, at Knoxville.

Assigned on Briefs Nov. 29, 2005.

April 12, 2006.

Application for Permission to Appeal Denied by Supreme Court Aug. 21, 2006.

Jeffrey P. Miles, Johnson City, Tennessee, for the appellant, Lionel Lindsey.

Paul G. Summers, Attorney General and Reporter; Renee W. Turner, Assistant Attorney General; H. Greeley Wells, Jr., District Attorney General; and Gene Perrin, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

THOMAS T. WOODALL, J., delivered the opinion of the court, in which GARY R. WADE, P.J., and JOSEPH M. TIPTON, J., joined.

Following a jury trial, Defendant was convicted of two counts of the sale of .5 grams or more of cocaine within one thousand feet of a school, a Class A felony. The trial court sentenced Defendant as a Range II, multiple offender, to concurrent sentences of thirty-two years, six months for each conviction. Defendant now appeals arguing (1) that the trial court erred in not granting Defendant's motion to dismiss the indictment; (2) that the trial court erred in permitting the State to amend the indictment without Defendant's consent after jeopardy attached; (3) that the trial court erred by denying Defendant's motion for mistrial; (4) that the evidence was insufficient to support Defendant's convictions; and (5) that the trial court erred in determining the length of Defendant's sentences. After a thorough review of the record, we conclude that Defendant failed to timely object under Rule 12 of the Tennessee Rules of Criminal Procedure to the defects in the indictment. We also conclude that the trial court erred in allowing the State to amend the indictment without Defendant's consent after jeopardy attached, but that such error was harmless beyond a reasonable doubt. We therefore affirm the trial court's judgments.

## I. Background

Sherry Ramsey, a detective with the Sullivan County Sheriff's Department, testified that she was temporarily assigned to

the Second Judicial District Drug Task Force in 2001. On October 29, 2001, Detective Ramsey said that Ginger Wilson, a confidential informant, made a series of telephone calls with Detective Ramsey's cell phone and arranged to buy some cocaine. Ms. Wilson's contact directed her to meet him on a street corner near a Salvation Army store. Ms. Wilson was searched and provided with $300 which had been photocopied. Detective Ramsey drove Ms. Wilson to the designated area and parked at 209 East Wynola Avenue where two African–American men were standing in the front yard. Ms. Wilson got out of the car and walked to the street corner. One of the men, whom Detective Ramsey identified as Defendant, met Ms. Wilson at the street corner. Ms. Wilson handed Defendant the money, and an exchange occurred although Detective Ramsey could not see from her location exactly what had been exchanged. Ms. Wilson returned to Detective Ramsey's car and handed her a baggie containing a white powdery substance.

On October 31, 2001, Ms. Wilson placed another telephone call to her contacts and was told to meet the seller at the same location. Detective Ramsey said that Ms. Wilson was outfitted with a wire transmitter for this transaction, and a police surveillance vehicle videotaped the transaction from a nearby parking lot. Ms. Wilson was again searched and given $300 to make the purchase. Detective Ramsey identified Defendant as the man who met Ms. Wilson on the designated street corner. Ms. Wilson handed the money to Defendant, and Defendant gave Ms. Wilson a baggie containing a white powdery substance.

On cross-examination, Detective Ramsey said that she was aware that Ms. Wilson agreed to assist the police because of an outstanding plea negotiation for prior charges. At the time of the trial, Ms. Wilson was in a nursing home in a coma as a result of an automobile accident. Detective Ramsey acknowledged that several people were under investigation at the time Ms. Wilson made her drug purchases. Detective Ramsey admitted that she had not met Defendant prior to the transaction. She had seen Defendant's driver's license photograph but did not have the photograph with her on either day. Detective Ramsey said that someone named "Jay" directed Ms. Wilson to go to the street corner near East Wynola Avenue on October 29, 2001, and that Ms. Wilson identified "Jay" to Detective Ramsey when they first arrived at the location. Detective Ramsey said that she did not know to whom Ms. Wilson spoke on the cell phone when she arranged the buy on October 31, 2001, but Ms. Wilson identified Defendant as the person who sold her the drugs on the street corner that day. On redirect, Detective Ramsey said she was personally acquainted with Robert Jay Sullivan.

Deputy Richard McCann, with the Sullivan County Sheriff's Department, operated the video equipment which filmed the transaction between Ms. Wilson and Defendant on October 31, 2001. He identified Defendant as the person who met with Ms. Wilson on that occasion.

Agent Brian Bishop with the Kingsport Police Department served as Director of the Second Judicial District Drug Task Force. He testified that a dark colored Chevrolet Caprice was parked in a lot close to 209 East Wynola Avenue on both October 29 and October 31, 2001. Agent Bishop said that the car was registered to Lionel R. Lindsey, which was Defendant's name, and he had seen Defendant drive the car prior to the transactions. Defendant left in the vehicle a few minutes after the October 29, 2001, transaction was completed.

Denise Buckner, a forensic scientist with the Tennessee Bureau of Investigation (T.B.I.), testified that the substance obtained by Ms. Wilson on October 29, 2001, was cocaine base and weighed 2.4 grams. The substance bought by Ms. Wilson on October 31, 2001, was also cocaine base and weighed 2.2 grams.

Jack White, the GIS Manager for the City of Kingsport, is responsible for the city's computer mapping needs. Based on the aerial photograph of the location of the drug buy, Mr. White testified that the intersection of Boone Street and East Wynola Avenue was approximately 480 feet from the New Horizon Alternative School.

## II. Challenges to the Indictment

A hearing was held out of the presence of the jury midway through Detective Ramsey's direct examination, during which Defendant moved to dismiss the indictment pursuant to Rule 12(b)(2) of the Tennessee Rules of Criminal Procedure. Defendant argued that the indictment failed to charge an offense that is cognizable in Tennessee.

Defendant was on trial on the charges contained in Counts 31 and 32 of the indictment. Count 31 of the indictment stated in pertinent part that Defendant on or about October 29, 2001, "did unlawfully, feloniously and knowingly sell and, or deliver point five (.5) grams or more of a substance containing Cocaine, a Schedule II Controlled Substance, within one thousand feet (1000') of the real property comprising a public secondary school, to wit: New Horizons Alternative School, contrary to T.C.A. § 39–17–417 and T.C.A. § 39–17–432, a Class A felony."

Count 32 of the indictment stated in pertinent part that Defendant on or about October 31, 2001, "did unlawfully, feloniously and knowingly sell and, or deliver point five (.5) grams or more of a substance containing Cocaine, a Schedule II Controlled Substance, within one thousand feet (1000') of the real property comprising a public secondary school, to wit: New Horizons Alternative School, contrary to T.C.A. § 39–17–417 and T.C.A. § 39–17–432, a Class A felony."

Defendant argued that "selling and delivering" a controlled substance is not a recognizable offense under Tennessee Code Annotated section 39–17–417, and an indictment's failure to charge an offense may be recognized by the trial court at any time during the pendency of the proceedings. *See* Tenn. R.Crim. P. 12(b)(2). After a lengthy hearing, the trial court found that the indictment, as worded, clearly charged Defendant with statutory offenses but impermissibly charged two offenses within a single count; that is, the offense of selling a controlled substance and the offense of delivering a controlled substance. The trial court found that Defendant had waived his objection to the defect in the indictment by not raising the issue before trial. *See id.* The trial court recognized that jeopardy had attached in Defendant's case. The trial court, however, granted the State's motion to amend the indictment without Defendant's consent to delete the words "and, or deliver" from each count of the indictment.

In his appeal, Defendant contends first that the trial court erred in not granting his motion to dismiss the indictment, and, if not error, that the trial court impermissibly permitted the State to amend the indictment without Defendant's consent after jeopardy had attached.

### A. Failure to Grant Defendant's Motion to Dismiss

■ An accused is constitutionally guaranteed the right to be informed of the nature and cause of the accusation. U.S.

Const. amend. 6, 14; Tenn. Const. art. I, § 9; *see Wyatt v. State*, 24 S.W.3d 319, 324 (Tenn.2000). Our courts have interpreted this constitutional mandate to require an indictment to "1) provide notice to the accused of the offense charged; 2) provide the court with an adequate ground upon which a proper judgment may be entered; and 3) provide the defendant with protection against double jeopardy." *Wyatt*, 24 S.W.3d at 324 (citations omitted). Further, an indictment is statutorily required to "state the facts constituting the offense in ordinary and concise language, without prolixity or repetition, in such a manner as to enable a person of common understanding to know what is intended, and with that degree of certainty which will enable the court, on conviction, to pronounce the proper judgment." Tenn.Code Ann. § 40–13–202. The question of the validity of an indictment is one of law and, as such, our review is *de novo*. *State v. Hill*, 954 S.W.2d 725, 727 (Tenn.1997).

■■■ It is an offense in Tennessee to knowingly "deliver a controlled substance," Tenn.Code Ann. § 40–17–417(a)(2), and it is an offense to knowingly "sell a controlled substance," Tenn.Code Ann. § 40–17–417(a)(3). The Sentencing Commission Comments make it clear that the offense of "selling" and the offense of "delivering" a controlled substance are two separate offenses in Tennessee. *Id.* § 40–17–417, Sentencing Commission Comments. Generally, it is impermissible to charge two distinct offenses in a single count of an indictment. *State v. Angela E. Isabell*, No. M2002–00584–CCA–R3–CD, 2003 WL 21486982, *3 (Tenn.Crim.App., at Nashville, June 27, 2003), *no perm. to app. filed* (citing *State v. Jefferson*, 529 S.W.2d 674, 678 (Tenn.1975)); *see also* Tenn. R.Crim. P. 8 (Two or more offenses may or shall, as pertinent to the circumstances of the offenses, be joined in an indictment "with

each offense stated in a separate count.") In other words, "all crimes arising from the same incident that are not lesser included offenses of another crime charged in the indictment must be charged in separate counts." *State v. Gilliam*, 901 S.W.2d 385, 389 (Tenn.Crim.App.1995) (citing *King v. State*, 717 S.W.2d 306, 307–08 (Tenn.Crim.App.1986)).

This Court has previously found indictments similar to Defendant's which combine the offenses of selling and delivery of a controlled substance in a single count to be impermissibly duplicitous. *See Isabell*, 2002 WL 21486982, at *3 (Count of indictment charging the defendant with the "sale or delivery of a controlled substance" impermissibly charged two separate offenses in a single count); *State v. Pap Jones*, No. 02C01–0201–CC–00002, 1993 WL 30624, *2 (Tenn.Crim.App., at Jackson, Feb. 10, 1993), *perm. to app. denied* (Tenn. June 1, 1993) (Single count of indictment charging Defendant with selling or delivering a controlled substance was impermissibly duplicitous).

"In reference to objections alleging failure to state an offense, the rationale is that if the indictment fails to include an essential element of the offense, no crime is charged and, therefore, no offense is before the court." *State v. Nixon*, 977 S.W.2d 119, 121 (Tenn.Crim.App.1997) (citing *State v. Perkinson*, 867 S.W.2d 1, 5–6 (Tenn.Crim.App.1992)). Defendant argues that, unlike the *Isabell* and *Jones* indictments, the use of the words "and, or" in his indictment, instead of merely "or," results in the failure to charge an offense as contemplated in Rule 12(b)(2) of the Tennessee Rules of Criminal Procedure.

We do not, however, place the same significance on the inclusion of the word "and" in Defendant's indictment as Defendant does. Defendant argues that Tennessee Code Annotated section 39–17–417

does not make it an offense in Tennessee to "sell and deliver" a controlled substance. Whether one reads Defendant's indictment as charging him with "selling and delivering," or "selling or delivering" cocaine, two separate, statutorily recognized offenses are charged. The language of each count alleges the essential elements of both the offense of selling a controlled substance and the offense of delivering a controlled substance. *Compare* Tenn.Code Ann. §§ 39–17–417(a)(2) with § 39–17–417(a)(3); *see State v. Tate,* 912 S.W.2d 785, 789 (Tenn.Crim.App.1995) (citations omitted) ("As a general rule, it is sufficient to state the offense charged in the words of the statute, or words which are equivalent to the words contained in the statute.") The indictment in the case *sub judice* fully informs Defendant of the essential elements of the charged offenses. *See Nixon,* 977 S.W.2d at 121 (citing *State v. Marshall,* 870 S.W.2d 532, 537 (Tenn. Crim.App.1993)).

Based on our review, we agree with the trial court's finding that Count 31 and Count 32 of Defendant's indictment are defective because each count charges two separate and distinct offenses. The defects in Defendant's indictment thus fall into the category of "defenses and objections" which are waived if not raised prior to trial, unless the trial court "for cause shown" grants relief from the waiver. Tenn. R.Crim. P. 12(b)(2) and (f). In this case, defense counsel candidly acknowledged that he was aware that Counts 31 and 32 of Defendant's indictment posed an "*Isabell* problem" and chose not to raise his objections before jeopardy attached. Based on our review, we conclude that the trial court did not err in denying Defendant's motion to dismiss the indictments.

### B. Amendment of the Indictment

■ Rule 7(b) of the Tennessee Rules of Criminal Procedure provides that:

[a]n indictment, presentment or information may be amended in all cases with the consent of the defendant. If no additional or different offense is thereby charged and no substantial rights of the defendant are thereby prejudiced, the court may permit an amendment without the defendant's consent before jeopardy attaches.

Jeopardy had clearly attached in the case *sub judice* when Defendant filed his motion to dismiss, and Rule 7(b) does not allow an amendment to the indictment after jeopardy attaches, without the defendant's consent. Tenn. R.Crim. P. 7(b); *see State v. Todd,* 654 S.W.2d 379, 382 (Tenn. 1983) (It is well settled that jeopardy attaches in a jury case after the jury is impaneled and sworn). Thus, the trial court erred in allowing the State to amend the indictment to delete the phrase "and, or deliver" from Count 31 and Count 32.

### C. Harmless Error Analysis

■ The trial court acknowledged the dilemma that, without some sort of action, the offenses as charged in Counts 31 and 32 could not be submitted to the jury under the analysis in *Isabell.* In *Isabell,* the State argued during closing argument that the defendant was guilty of "the sale or delivery" of the controlled substances. *Isabell,* 2003 WL 21486982, at *4. The trial court instructed the jury that it must find that the defendant "sold or delivered" the controlled substances beyond a reasonable doubt, and the verdict form reflected that the jury found the defendant "Guilty of Sale or Delivery." *Id.* Noting that the constitutional right to a jury trial " 'necessarily includes the right to a unanimous jury verdict before a conviction of a criminal offense may be imposed,' " the court reversed the defendant's conviction due to the lack of unanimity in the verdict. *Id.*

(quoting *State v. Lemacks,* 996 S.W.2d 166, 169 (Tenn.1999)).

Although this analysis does not support an amendment to the indictment in contravention of Rule 7(b), it is relevant in determining whether the error was harmless beyond a reasonable doubt. *See State v. Carter,* 121 S.W.3d 579, 587 n. 5 (Tenn. 2003) (Although the trial court erred "in allowing the prosecution to amend this count of the defendant's indictment after the close of proof and over the defendant's objection, ... because we find that the indictment was sufficient prior to its amendment and no new or different offense was charged, the error was harmless.")

Relying on *Stirone v. United States,* 361 U.S. 212, 80 S.Ct. 270, 4 L.Ed.2d 252 (1960), Defendant argues that the amendment to the indictment deprived him of his right to be indicted by the grand jury. In *Stirone,* a variance in the proof offered at trial served as a constructive and impermissible amendment of the indictment. The defendant was charged under the Hobbs Act with unlawful interference with the importation of sand and other materials into Pennsylvania from other states. The government also introduced evidence at trial, however, of unlawful interference with steel shipments from Pennsylvania into other states. The trial court charged the jury that, as to the interstate commerce element of the offense, the jury could rely upon either the importation of sand or the exportation of steel. *Id.* at 214, 80 S.Ct. at 272.

The Supreme Court held that "after an indictment has been returned its charges may not be broadened through amendment except by the grand jury itself." *Id.* at 216, 80 S.Ct. at 272 (citing *Ex parte Bain,* 121 U.S. 1, 7 S.Ct. 781, 30 L.Ed. 849 (1887)). To do otherwise would destroy "the defendant's substantial right to be

tried only on charges presented in an indictment returned by a grand jury. Deprivation of such a basic right is far too serious to be treated as nothing more than a variance and then dismissed as harmless error." *Id.* at 217, 80 S.Ct. at 273.

The Supreme Court, however, later emphasized that *Stirone* stands for the proposition that an indictment may not be amended "by *broadening* the possible bases for conviction from that which appears in the indictment." *United States v. Miller,* 471 U.S. 130, 138, 105 S.Ct. 1811, 1816, 85 L.Ed.2d 99 (1985)(emphasis in original). The Supreme Court expressly overruled *Ex parte Bain* in *Miller* to the extent that *Bain* could be read to hold that "a narrowing of an indictment constitutes an 'amendment' that renders the indictment void." The court stated that "where an indictment charges several offenses, or the commission of one offense in several ways, the withdrawal from the jury's consideration of one offense or one alleged method of committing it does not constitute a forbidden amendment of the indictment." *Id.* at 145, 105 S.Ct. at 1819–20 (citing *Salinger v. United States,* 272 U.S. 542, 548–49, 47 S.Ct. 173, 174–75, 71 L.Ed. 398 (1926)).

Counts 31 and 32 of the indictment charged Defendant with "knowingly sell[ing] and, or deliver[ing]" a controlled substance. Defendant argues that because of the use of both the conjunctive and the disjunctive in describing the charged offenses, there is no way to tell whether the grand jury indicted him on the sale offense, or the delivery offense, or both. That is, it is possible that the grand jury was unwilling to indict him on the sale offense but found probable cause for the delivery offense. This argument was presented and rejected in *Miller.* In *Miller,* the defendant was indicted on two offenses but the proof at trial pertained only to the offense of lying to his insurance company

about the value of his stolen property. The State moved to strike the first charged offense from the indictment. The defendant objected to the proposed amendment, and, unlike the case *sub judice,* the entire indictment was submitted to the jury. The jury returned a guilty verdict as to the second charge, and the defendant appealed, alleging a fatal variance between the proof at trial and "the scheme alleged in the indictment." *Miller,* 471 U.S. at 131–34, 105 S.Ct. at 1813–14. Defendant argued that his Fifth Amendment right to be tried only upon a grand jury indictment had been violated because there was no way of knowing whether the jury would have indicted Defendant only on the more narrow offense. *Id.,* 471 U.S. at 134–35, 105 S.Ct. at 1814. As noted above, the Supreme Court rejected Defendant's argument, concluding that removal of one of the charged offenses from the jury does not operate as an impermissible amendment to the indictment. *Id.* at 145, 105 S.Ct. at 1819–20; *See also Salinger,* 272 U.S. at 549, 47 S.Ct. at 175 (Removal of all counts but one from the jury did not add anything to the indictment that was not charged and "was not even remotely an infraction" of the constitutional guarantee of indictment by the grand jury.)

In *Pap Jones,* the defendant, prior to trial and prior to the attachment of jeopardy, filed a motion to dismiss the indictment which charged the defendant with the sale or delivery of a controlled substance. The trial court allowed the State to amend the indictment to delete that portion of the indictment related to the delivery of cocaine and denied the defendant's motion to dismiss. A panel of this Court concluded that the deletion of the words "or delivery" from the indictment did not result in the charge of a new or additional offense. *Jones,* 1993 WL 30624, at \*2.

Although jeopardy had attached in the instant case, the deletion of the words "and, or deliver" did not result in the charge of a new or different offense. *Carter,* 121 S.W.3d at 588 n. 5; *Jones,* 1993 WL 30624, at \*2. Defendant was clearly provided with ample notice of the offense charged, including the facts constituting the offense, the name of the defendant, the date of the alleged offense, the amount and type of substance sold, and the statute violated. *See Carter,* 121 S.W.3d at 588.

Based on the foregoing, we conclude that the trial court erred in permitting the State to amend the indictment after jeopardy attached to delete the words "and, or deliver," but find such error to be harmless beyond a reasonable doubt. Defendant is not entitled to relief on this issue.

## III. Motion for Mistrial

■ At trial, Defendant presented a theory of defense based on identity. As part of his pre-trial investigation, defense counsel was informed that another suspect identified by Sergeant Ramsey as a participant in an unrelated drug buy was actually incarcerated at the time of the transaction. According to a letter received from Sergeant Lori Delp with the Sullivan County jail, Robert Gill was incarcerated in their facility from November 30, 2001, until he was transferred to Brushy Mountain State Penitentiary on January 29, 2003. Relying on this information, defense counsel posed the following questions to Detective Ramsey during cross-examination:

> DEFENSE COUNSEL: And as part of your investigation in this case, not this particular case but the broader investigation you made a mistake in one situation, didn't you?
>
> DETECTIVE RAMSEY: How?
>
> DEFENSE COUNSEL: A mistake regarding the identification of someone

who sold drugs during the course [of] an undercover operation.

DETECTIVE RAMSEY: In reference to which?

DEFENSE COUNSEL: January 26th, 2002. Do you recall?

DETECTIVE RAMSEY: No, I don't.

DEFENSE COUNSEL: Do you recall being involved in an investigation on January 26th, 2002 with Ginger Wilson where the subject was someone by the name of Robert Gill the Fourth [sic], went by the name of Beezo?

DETECTIVE RAMSEY: I don't know which one you're talking about.

. . .

DEFENSE COUNSEL: What I'm handing to you Detective Ramsey is a report which I believe you prepared following an undercover operation that was done on January 26th, 2002.... And do you now recall that you were involved in a transaction involving a person known as Beezo?

DETECTIVE RAMSEY: Yes.

. . .

DEFENSE COUNSEL: Okay ... was it in fact that you identified Robert Beezo Gill as one of the persons ... involved in that drug transaction on January 26th, 2002?

DETECTIVE RAMSEY: Beezo was one of them, yes.

DEFENSE COUNSEL: And Beezo's name is mentioned quite a bit in your report, right?

DETECTIVE RAMSEY: Yes.

DEFENSE COUNSEL: You do know, don't you Detective Ramsey, that on January 26th, 2002 Robert Gill was incarcerated in the Sullivan County jail.

DETECTIVE RAMSEY: I don't know that, no.

DEFENSE COUNSEL: You don't know that?

DETECTIVE RAMSEY: Huh-uh (negative).

DEFENSE COUNSEL: No further questions, Your Honor.

During the trial, defense counsel learned that the information concerning Mr. Gill's confinement was incorrect, and that Mr. Gill, in fact, was not incarcerated on January 26, 2002. Defendant moved for a mistrial. The trial court found, and defense counsel conceded, that there was no evidence that Sergeant Delp intentionally misled defense counsel. Furthermore, the trial court found that there was no manifest necessity, under the facts presented, to grant Defendant's motion for a mistrial. The State and Defendant, through defense counsel, entered into an agreed upon stipulation which was read to the jury as follows:

The parties have stipulated that prior to the trial of this case the records custodian for the Sullivan County jail advised counsel for [Defendant] in writing that Robert Beezo Gill the Fourth [sic] was continuously incarcerated at the Sullivan County jail from November 30th, 2001, until January 29th, 2003. During this trial, the District Attorney General's office was also provided with this same information by the Sullivan County jail records custodian; however, further investigation of court records has established that the information provided to counsel for [Defendant] and the District Attorney General's Office by the records custodian of the Sullivan County jail was incorrect and that in fact Robert Beezo Gill the Fourth [sic] was not incarcerated at the Sullivan County jail between December 4th, 2001, and April 24th, 2002.

Defendant argues in his appeal that the trial court erred in not declaring a mistrial

as a result of the incorrect information provided by the Sullivan County jail prior to trial. Defendant contends that employees of a governmental agency "should be held to a higher standard than a mere lay witness, and that when they provide information to defense counsel during an investigation of a criminal matter, defense counsel should be entitled to rely on such information in preparing a defense and cross-examination of the State's witnesses."

■■■ The decision of whether or not to grant a mistrial rests within the sound discretion of the trial court and should not be disturbed on appeal absent a clear showing of abuse. *State v. Robinson,* 146 S.W.3d 469, 494 (Tenn.2004). "A mistrial should be declared only upon a showing of manifest necessity" such that " 'a miscarriage of justice would result' " if the trial were to continue. *Id.* (citing *State v. Saylor,* 117 S.W.3d 239, 250–51 (Tenn.2003)) (quoting *State v. Land,* 34 S.W.3d 516, 527 (Tenn.Crim.App.2000)). The burden of showing the necessity of a mistrial is upon the party seeking the mistrial. *Land,* 34 S.W.3d at 527 (citing *State v. Williams,* 929 S.W.2d 385, 388 (Tenn.Crim.App. 1996)).

There is no indication in this case, and Defendant does not otherwise suggest, that Sergeant Delp intentionally provided defense counsel with false information. Nor does Defendant suggest that the inaccuracies in Sergeant Delp's letter violated any of his constitutional rights. Defendant's main concern at trial was whether or not the State would capitalize on the mistake during closing argument. Although Detective Ramsey was the State's main witness against Defendant, Deputy McCann also identified Defendant as the perpetrator, and there was a videotape of the transaction on October 31, 2001.

■■■ "The purpose for declaring a mistrial is to correct damage done to the judicial process when some event has occurred which precludes an impartial verdict." *Williams,* 929 S.W.2d at 388. Based on our review and the curative steps undertaken by the parties, we cannot conclude that the initially incorrect information from the Sullivan County jail rises to the level of prejudice resulting in a "manifest necessity" for a mistrial. Defendant is not entitled to relief on this issue.

## IV. Sufficiency of the Evidence

■■■ Defendant argues that the evidence was insufficient to prove his identity as the perpetrator of the offenses beyond a reasonable doubt.

■■■ When a defendant challenges the sufficiency of the convicting evidence, we must review the evidence in a light most favorable to the prosecution in determining whether a rational trier of fact could have found all the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). Once a jury finds a defendant guilty, his or her presumption of innocence is removed and replaced with a presumption of guilt. *State v. Black,* 815 S.W.2d 166, 175 (Tenn. 1991). The defendant has the burden of overcoming this presumption, and the State is entitled to the strongest legitimate view of the evidence along with all reasonable inferences which may be drawn from that evidence. *Id.; State v. Tuggle,* 639 S.W.2d 913, 914 (Tenn.1982). The jury is presumed to have resolved all conflicts and drawn any reasonable inferences in favor of the State. *State v. Sheffield,* 676 S.W.2d 542, 547 (Tenn.1984). Questions concerning the credibility of witnesses, the weight and value to be given the evidence, and all factual issues raised by the evidence are resolved by the trier of fact and

not this court. *State v. Bland,* 958 S.W.2d 651, 659 (Tenn.1997). These rules are applicable to findings of guilt predicated upon direct evidence, circumstantial evidence, or a combination of both direct and circumstantial evidence. *State v. Matthews,* 805 S.W.2d 776, 779 (Tenn.Crim. App.1990).

■ Defendant was convicted of two counts of the sale of .5 grams or more of cocaine within one thousand feet of a school. *See* Tenn.Code Ann. §§ 39–17–417(a)(1), 39–17–432(b). Defendant's challenge to the sufficiency of the evidence is directed toward the identification evidence presented at trial. The identity of the perpetrator is an essential element of any crime. *See State v. Thompson,* 519 S.W.2d 789, 793 (Tenn.1975). As to the October 29, 2001, transaction, Defendant submits that Detective Ramsey admitted that she had not met Defendant prior to the transactions, and she had only seen a photograph which was not with her on the day of the sale. Moreover, Detective Ramsey acknowledged that she was parked about 125 feet from the location of the transaction and could not positively identify Defendant until he reached the street corner. On October 31, 2001, Detective Ramsey said that she was parked about ten to twenty feet further from the street corner than where she parked on October 29, 2001. In addition, Defendant points out that Deputy McCann also testified that he could not identify Defendant until he reached the street corner, and acknowledged that portions of the videotape were blurry.

■ The reliability of an in-court identification depends on the totality of the circumstances, "including the opportunity of the witness to view the offender at the time of the crime, the witness's degree of attention, the accuracy of the prior description of the offender, the level of certainty of the witness at the confrontation, and the length of time between the crime and the confrontation." *State v. Beal,* 614 S.W.2d 77, 82 (Tenn.Crim.App.1981) (citing *Neil v. Biggers,* 409 U.S. 188, 199, 93 S.Ct. 375, 382, 34 L.Ed.2d 401 (1972); *Manson v. Brathwaite,* 432 U.S. 98, 114, 97 S.Ct. 2243, 2253, 53 L.Ed.2d 140 (1977); *Rippy v. State,* 550 S.W.2d 636, 639–40 (Tenn. 1977)).

■ The identification of the defendant as the person who committed the crime is a question of fact for the jury. *See State v. Strickland,* 885 S.W.2d 85, 87 (Tenn.Crim.App.1993). The credible testimony of one identification witness is sufficient to support a conviction if the witness viewed the accused under such circumstances as would permit a positive identification to be made. *State v. Radley,* 29 S.W.3d 532, 536 (Tenn.Crim.App.1999) (citing *Strickland,* 885 S.W.2d at 87–88).

By its verdict, the jury obviously resolved any issues of identification in favor of the State's witnesses who identified Defendant as the perpetrator of the offenses. Moreover, while the videotape is blurry in spots, Defendant's features are clearly visible before and after the transaction on October 31, 2001. Agent Buckner testified that the substance sold on October 29, 2001, was cocaine base and weighed 2.4 grams, and that the substance sold on October 31, 2001, was also cocaine base and weighed 2.2 grams. Mr. White testified that the location of the transaction was approximately 480 feet from the New Horizon Alternative School. Based on the foregoing, we conclude that a rational trier of fact could have found Defendant guilty of the offenses of the sale of .5 grams or more of cocaine within one thousand feet of a school on both October 29, 2001, and October 31, 2001. Defendant is not entitled to relief on this issue.

### V. Sentencing Issues

■ Defendant does not challenge his classification as a Range II, multiple offender. He argues, however, that the trial court failed to take into consideration certain mitigating factors which Defendant contends were applicable and thus erred in determining the length of Defendant's sentences.

■ When a defendant challenges the length, range, or manner of service of a sentence, this Court conducts a *de novo* review with a presumption that the determinations made by the trial court are correct. Tenn.Code Ann. § 40–35–401(d). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn.1991). The presumption does not apply to the legal conclusions reached by the trial court in sentencing a defendant or to the determinations made by the trial court which are predicated upon uncontroverted facts. *State v. Dean*, 76 S.W.3d 352, 377 (Tenn.Crim.App.2001) (citations omitted). Because the record reflects that the trial court considered the sentencing principles and all relevant facts and circumstances, our review is *de novo* with a presumption of correctness. Tenn. Code Ann. § 40–35–401(d).

The Sentencing Commission Comments provide that the burden is on the defendant to show the impropriety of the sentence. *Id.* § 40–35–401, Sentencing Commission Comments. In conducting a *de novo* review of a sentence, we must consider: (1) the evidence, if any, received at the trial and sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments of counsel relative to sentencing alternatives; (4) the nature and characteristics of the offense; (5) any mitigating or enhancing factors; (6) any

statements made by the defendant in his own behalf; and (7) the defendant's potential for rehabilitation or treatment. *Id.* §§ 40–35–102, –103, and –210; *State v. Smith*, 735 S.W.2d 859, 863 (Tenn.Crim. App.1987).

As a Range II, multiple offender, Defendant is subject to a sentence of between twenty-five and forty years for his drug convictions which are Class A felonies. Tenn.Code Ann. §§ 40–35–112(a)(1). In calculating the sentence for a Class A felony conviction, the presumptive sentence is the midpoint of the range if there are no enhancement or mitigating factors. *Id.* § 40–35–210(c). If there are enhancement but no mitigating factors, the trial court may set the sentence at or above the presumptive sentence for the Class A felony conviction, but still within the range. *Id.* § 40–35–210(d). Should there be enhancement and mitigating factors for a Class A felony, the court must start at the midpoint of the range, enhance the sentence within the range as appropriate for the enhancement factors, and then reduce the sentence within the range as appropriate

The State introduced into evidence Defendant's presentence report and certified copies of Defendant's prior felony convictions at the sentencing hearing. Defendant was convicted of conspiracy to distribute and to possess with intent to distribute in excess of .5 grams of cocaine base in the United States District Court for the Southern District of Ohio on February 23, 1994. He was sentenced to one hundred and twenty months, sixty months of which was to be served in confinement followed by five years supervised release. According to the presentence report, Defendant's probation was revoked on May 14, 1999, and he was ordered to serve one year in confinement, then placed back on probation.

Defendant's probation was again revoked on September 17, 2001. He was ordered to serve thirty days in confinement, and then released from probation.

On November 16, 2000, Defendant pled guilty in Jefferson County, Ohio, to one count of aggravated trafficking in crack cocaine exceeding one gram but less than five grams in the vicinity of a juvenile or a school. He was sentenced to three years, all of which was suspended and Defendant placed on probation. On November 8, 2001, Defendant was found in violation of his probation because he tested positive for cocaine. Defendant was ordered to complete a drug treatment program and then placed back on probation. Defendant was on probation for this offense when he committed the current offenses.

In addition to his felony convictions, Defendant pled guilty to unauthorized use of a vehicle in Ohio in 2001, and has several juvenile adjudications for various traffic offenses, theft, assault, and disorderly conduct. Defendant admitted that he had "tried alcohol in the past," but he denied ever using any illegal drugs.

In determining the length of Defendant's sentence, the trial court considered his prior criminal history other than his felony convictions and accorded some weight to this factor. *See* Tenn.Code Ann. § 40–35–114(2). The trial court also assigned some weight as a mitigating factor to the fact that Defendant's conduct did not cause or threaten serious bodily injury. *See id.* § 40–35–113(1). Because the enhancement factor and mitigating factor were assigned similar weights, the trial court sentenced Defendant to the presumptive minimum sentence, or thirty-two years and six months for each conviction. The trial court ordered the sentences to be served concurrently with each other.

Defendant argues that the trial court erred in not mitigating his sentence because although the transaction took place in a drug-free school zone, he did not sell drugs to school children. Defendant also submitted as mitigating factors the fact that the total amount of drugs sold, less than five grams, was "relatively small," and the fact that the confidential informant, not Defendant, initiated the transactions. Based on our review, we conclude that the trial court did not abuse its discretion in declining to consider these factors in mitigation of Defendant's sentence under Tennessee Code Annotated section 40–35–113(13).

The purpose of the drug-free school zone is to provide "all students in this state an environment in which they can learn without the distractions and dangers that are incident to the occurrence of drug activity in or around school facilities." Tenn.Code Ann. § 39–17–432(a). The fact that Defendant sold drugs to an adult rather than a minor in a drug-free school zone does not create any less of an environment of distraction and danger. Although Defendant argues that the total amount of drugs sold was "so relatively small as to warrant a reduction" in his sentence, the amount sold on each day was well above the statutory minimum for the charged offenses. Finally, the fact that the confidential informant rather than Defendant initiated the transaction is not entitled to consideration as a mitigating factor. Defendant clearly responded voluntarily to Ms. Wilson's request to purchase drugs and chose the location for the transaction. The sales occurred within a forty-eight hour time span, and Defendant has a prior criminal record of selling drugs.

Based on the foregoing, including Defendant's previous difficulties with abiding by

the terms of his probationary sentences for his prior drug offenses, we conclude that the trial court did not err in sentencing Defendant to the presumptive sentence of thirty-two years and six months for each conviction.

## CONCLUSION

After a thorough review, we affirm the judgments of the trial court.