# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### Assigned on Briefs July 26, 2016

## STATE OF TENNESSEE v. MICHAEL DEWAYNE HALL

### Appeal from the Circuit Court for Blount County
### Nos. C0021744, C0021745    Tammy M. Harrington, Judge

———————————

### No. E2015-02173-CCA-R3-CD – Filed May 4, 2017

———————————

The Defendant, Michael Dewayne Hall, was convicted by a Blount County Jury of sale or delivery of cocaine under 0.5 grams in the drug-free zone of a public park, a Class C felony, and sale or delivery of cocaine over 0.5 grams in the drug-free zone of a public park, a Class B felony. As a career offender, he received an effective sentence of thirty years in the Tennessee Department of Correction. On appeal, the Defendant claims: (1) the trial court improperly admitted a map into evidence at trial; (2) the trial court improperly denied his motion to dismiss the indictment; (3) the evidence is insufficient to sustain his convictions; and (4) the trial court improperly acted as thirteenth juror to approve the jury's verdict. We conclude that the trial court properly admitted the map, denied the motion to dismiss, and acted as thirteenth juror, and that the evidence is sufficient to sustain the Defendant's convictions. However, after a plain error review, the duplicitous nature of the Defendant's convictions for "sale or delivery" of cocaine constitutes reversible error and violates the Defendant's fundamental and substantial right to a unanimous jury verdict. Accordingly, we reverse, vacate, and dismiss the Defendant's convictions.

### Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Reversed, Vacated and Dismissed

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which THOMAS T. WOODALL, P.J., and ROBERT H. MONTGOMERY, JR., J., joined.

Ashley Morris Bentley, Maryville, Tennessee, for the Defendant-Appellant, Michael Dewayne Hall.

Herbert H. Slatery III, Attorney General and Reporter; Robert W. Wilson, Senior Counsel; Michael W. Flynn, District Attorney General; and Matthew L. Dunn, Assistant District Attorney General, for the Appellee, State of Tennessee.

**OPINION**

This appeal stems from two controlled drug purchases completed by an informant working for the Fifth Judicial Drug Task Force of the Blount County Sheriff's Office. The Defendant was indicted by the Blount County Grand Jury for his involvement in both purchases, which occurred within a drug-free zone. A jury trial began on May 15, 2014, at which time the following evidence was adduced.

**Trial.** Officer Rusty Aycocke testified that a confidential informant ("CI") was used to conduct two controlled drug purchases from the Defendant on September 10, 2012, and December 19, 2012. Prior to each purchase, Officer Aycocke searched the CI and his vehicle, provided him with marked money to purchase drugs, and equipped him with a recording device. Officer Aycocke followed the CI and observed him enter a house on 270 East Lincoln. After the CI arrived at the house, the Defendant left and then returned a short time later. Officer Aycocke believed that the Defendant left the house for his supply of crack cocaine, and then returned to provide the drugs to the CI. After the purchase was completed, the CI met Officer Aycocke at a prearranged location and gave him the crack cocaine that he purchased from the Defendant. Officer Aycocke testified that the CI obtained 0.84 grams of crack cocaine from the Defendant during the September purchase, 0.31 grams of crack cocaine during the December purchase, and that both samples tested positive for cocaine during a field test.

Officer Aycocke later viewed two videos of the CI during each controlled purchase, which were admitted as exhibits at trial. Officer Aycocke also identified multiple still photographs taken from the videos, including: a photograph of the Defendant's face, a photograph of the Defendant's reaching hand, a photograph of the Defendant's and the CI's hands together, a photograph of a hand holding a crack cocaine rock, and a photograph showing a crack cocaine rock on top of a dresser in the Defendant's bedroom.

On cross-examination, Officer Aycocke stated that he had worked with this particular CI on over thirty controlled drug purchases and that the CI received $100 for his participation in each purchase. Officer Aycocke testified that the Defendant was arrested in December 2012, following the second controlled drug purchase, and that none of the marked bills or crack cocaine were on the Defendant's person at that time. Officer Aycocke acknowledged that he was unable to follow the Defendant when he left the residence during both the September and December purchases to determine where he went to obtain the drugs.

The CI testified that he had worked with the Fifth Judicial Drug Task Force for approximately two years and had known the Defendant for approximately three years.

For each drug purchase, he initiated contact with the Defendant and went to 270 East Lincoln, where the Defendant resided, to conduct the exchange. The CI testified that the Defendant normally did not have the drugs at home, and that after receiving the money, he would leave the house to get the drugs. The CI admitted that he had a drug problem, that he had previously smoked crack cocaine with the Defendant, and that he had visited 270 East Lincoln as many as "six, eight times in a night."

Ray Boswell, a Geographic Information Systems Manager for the City of Maryville, prepared a map of 270 East Lincoln, the Defendant's house, where the controlled drug purchases occurred. The map showed that the house was within 1,000 feet of two nearby parks, the Richard Williams Park and the Oldfield Community Park.[1] Jacob White, a forensic scientist for the Tennessee Bureau of Investigation, testified that the rock-like substances recovered from the informant after both controlled drug purchases tested positive for cocaine.

The State rested, and the Defendant did not offer any proof. The jury returned a guilty verdict on all counts, and the trial court affirmed the verdict as the thirteenth juror and set the case for a sentencing hearing. After sentencing, the Defendant filed a motion for a new trial. The trial court denied the motion, and the Defendant filed a timely notice of appeal.

On November 3, 2016, after the parties submitted their initial briefs, we directed the circuit court clerk to supplement the record and instructed the parties to file supplemental briefs, explaining the effect of State v. Angela E. Isabell, No. M2002-00584-CCA-R3-CD, 2003 WL 21486982 (Tenn. Crim. App. June 27, 2003), and State v. Lindsey, 208 S.W.3d 432 (Tenn. Crim. App. 2006) on the present appeal. See Tenn. R. App. P. 24(e) ("If necessary, the appellate or trial court my direct that a supplemental record be certified and transmitted."); see Tenn. R. App. P. 36(b) (allowing appellate courts to raise issues sua sponte affecting the substantial rights of a party); State v. Caudle, 388 S.W.3d 273, 279 (Tenn. 2012) (stating that an order of supplementation may be the proper remedy for any deficiencies in the record). The supplemental record was filed on December 22, 2016, and supplemental briefing was completed on March 20, 2017.

## ANALYSIS

The Defendant challenges the introduction of specific evidence at trial, the denial of his motion to dismiss the indictment, the sufficiency of the evidence, and the trial

---

[1] The parties and witnesses also occasionally referred to the Oldfield Community Park as the "Oldfield Mini Park" or the "Oldfield Public Park." To avoid confusion, we refer to this park only as the "Oldfield Community Park."

court's role as thirteenth juror. However, before addressing these issues, we are constrained to address what we perceive to be flaws contained in the indictments, jury instructions, and verdict forms as plain error. The duplicitous nature of the Defendant's convictions for "sale or delivery" of controlled substances is a constitutional error affecting the Defendant's substantial right to a unanimous jury verdict and reviewable under plain error analysis. For the reasons outlined below, we must reverse, vacate, and dismiss the Defendant's convictions.

**I. Plain Error.** The plain error doctrine states that "[w]hen necessary to do substantial justice, an appellate court may consider an error that has affected the substantial rights of a party at any time, even though the error was not raised in the motion for a new trial or assigned as error on appeal." Tenn. R. App. P. 36(b).

In order for this court to find plain error, "(a) the record must clearly establish what occurred in the trial court; (b) a clear and unequivocal rule of law must have been breached; (c) a substantial right of the accused must have been adversely affected; (d) the accused did not waive the issue for tactical reasons; and (e) consideration of the error is 'necessary to do substantial justice.'" State v. Smith, 24 S.W.3d 274, 282 (Tenn. 2000) (quoting State v. Adkisson, 899 S.W.2d 626, 641-42 (Tenn. Crim. App. 1994)). "[T]he presence of all five factors must be established by the record before this Court will recognize the existence of plain error, and complete consideration of all the factors is not necessary when it is clear from the record that at least one of the factors cannot be established." Id.

Here, it is clearly established in the record that the Defendant was erroneously charged with two separate and distinct offenses in the same indictment. The Defendant was indicted for two counts of sale or delivery of cocaine, one count under 0.5 grams and one count more than 0.5 grams. The trial court instructed the jury that, in order to find the Defendant guilty, the jury must find beyond a reasonable doubt "that the [D]efendant delivered or sold a Schedule II controlled substance." Moreover, the verdict forms reflect that the jury found the Defendant "[g]uilty of [s]ale or [d]elivery" and the State argued during closing arguments that the Defendant "delivered or sold" the controlled substance. We conclude that the record adequately establishes what occurred at trial for purposes of plain error review.

Additionally, the rule of law which governs this issue clearly and unambiguously supports a finding that the Defendant's substantial right to a unanimous jury verdict was adversely affected. See State v. Brown, 823 S.W.2d 576, 585 (Tenn. Crim. App. 1991) ("[T]he unanimity requirement is a fundamental right and not contingent upon a request being made."). This court held in State v. Angela E. Isabell that delivery and sale of a controlled substance are separate offenses and should not be charged in the same count of

an indictment. 2003 WL 21486982, at *3-4. In <u>Angela E. Isabell</u>, the defendant was charged with "sale or delivery" of a controlled substance. <u>Id.</u> at *3. In reversing the convictions, this court explained:

> The sentencing commission comments following Tennessee Code Annotated section 39-17-417 explain that "[t]he commission wished to make it clear that each of these acts [, i.e. the manufacture of a controlled substance, the delivery of a controlled substance, and the sale of a controlled substance,] was a separate offense." <u>See</u> T.C.A. § 39-17-417(a)(1)-(3). Generally, it is impermissible to charge two distinct offenses in a single count [of an] indictment. <u>See</u> <u>State v. Jefferson</u>, 529 S.W.2d 674, 678 (Tenn. 1975). In other words, "all crimes arising from the same incident that are not lesser included offenses of another crime charged in the indictment must be charged in separate counts." <u>State v. Gilliam</u>, 901 S.W.2d 385, 389 (Tenn. Crim. App. 1995). Accordingly, if the indictments underlying the offenses had charged the offenses in separate alternative counts; e.g., count one the sale of crack cocaine, count two the delivery of crack cocaine; the indictment would not be faulty. We agree with the appellant that the indictments impermissibly charged two separate offenses within a single count.
>
> Moreover, in Tennessee a criminal accused enjoys a constitutional right to a jury trial when she faces confinement or a fine of more than fifty dollars. <u>See</u> <u>State v. Lemacks</u>, 996 S.W.2d 166, 169 (Tenn. 1999). "This constitutional right necessarily includes the right to a unanimous jury verdict before a conviction of a criminal offense may be imposed." <u>Id.</u> at 169-70. Notably,
>
>> [q]uestions regarding jury unanimity generally arise in cases where the prosecution presents evidence to the jury that tends to show more than one criminal offense, but the underlying indictment is not specific as to the offense for which the accused is being tried.
>
> <u>Id.</u> at 170. Importantly, the right to unanimity protects against the possibility of a "patchwork" verdict. <u>See</u> <u>State v. Forbes</u>, 918 S.W.2d 431, 446 (Tenn. Crim. App. 1995). In other words, the appellant is entitled to be convicted of the <u>sale</u> of a controlled substance or the <u>delivery</u> of a controlled substance; she cannot be convicted of the <u>sale or delivery</u> of a controlled substance based upon the same set of facts under a single count of an indictment.

Angela E. Isabell, 2003 WL 21486982, at *3; See 9 David L. Raybin, Tennessee Practice, Criminal Practice and Procedure § 16:16 (2008). This court went on to note in Angela E. Isabell that a verdict form which reflects that the jury found a defendant guilty of "sale or delivery" is "unclear as to what offense the jury unanimously convicted the appellant" and, thus, "[t]he jury's true decision is a matter of speculation . . . [a]ccordingly, we must reverse the appellant's conviction due to the lack of unanimity in the verdict." Id. at *4 (internal citations omitted).

The record reflects that neither party nor the trial court raised this issue at any time and, therefore, the Defendant did not waive the issue for a tactical reason. See Id. at *4 (noting that the appellant did not raise the unanimity issue at trial but unanimity is a "fundamental right . . . not contingent upon a request being made."); but see State v. Lindsey, 208 S.W.3d 432 (Tenn. Crim. App. 2006) (finding that, although the indictment erroneously charged that the defendant did "sell and, or deliver" cocaine, the defendant's motion to dismiss the indictment was waived because defense counsel made a tactical decision not to raise the issue until after jeopardy had attached). Therefore, the consideration of this issue is necessary to prevent a miscarriage of justice. See Adkisson, 899 S.W.2d at 643.

Moreover, the State has failed to distinguish Angela E. Isabell from the facts of this case. The State acknowledges this court's holding in Angela E. Isabell and that an indictment which charges "sale or delivery" is duplicitious, but argues that plain error relief is not warranted here "because the proof of delivery on both counts is overwhelming, and no reasonable juror could have found sale without also finding delivery." The State also attempts to distinguish Angela E. Isabell because it conceded error in that case. In our view, the facts in Angela E. Isabell are identical to the case at bar. Therefore, we are unpersuaded by the State's argument.

Based on the above, we conclude that plain error exists, which requires the Defendant's convictions to be reversed, vacated, and dismissed. Nevertheless, in light of potential future appellate review, we will address the Defendant's remaining issues raised on appeal as follows.

**II.  Introduction of Map at Trial.** The Defendant contends that he should be granted a new trial because the trial court erred in admitting the State's map into evidence and because he was prejudiced by this error. Specifically, the Defendant argues that he was prejudiced because "the defense had never been provided the objectionable discovery and . . . this same discovery was used in the [S]tate's case-in-chief to secure the [d]rug-[f]ree [z]one classification." In response, the State argues that the Defendant has not shown that the admission of the map prejudiced his defense.

Tenn. R. Crim. P. 16(a)(1)(F) states the following regarding the disclosure of evidence by the State:

> Upon a defendant's request, the state shall permit the defendant to inspect and copy or photograph books, papers, documents, photographs, tangible objects, buildings, or places, or copies or portions thereof, if the item is within the state's possession, custody, or control and:
>
> (i) the item is material to preparing the defense;
>
> (ii) the government intends to use the item in its case-in-chief at trial; or
>
> (iii) the item was obtained from or belongs to the defendant.

Rule 16 also states that in the event that a party fails to comply with a discovery request, the trial court may "order that party to permit the discovery or inspection," "grant a continuance," "prohibit the party from introducing the undisclosed evidence," or "enter such other order as it deems just under the circumstances." Tenn. R. Crim. P. 16(d)(2)(A)-(D). "A trial court has wide discretion in fashioning a remedy for non-compliance with a discovery order, and the sanction should fit the circumstances of the case." State v. Downey, 259 S.W.3d 723, 737 (Tenn. 2008) (citing State v. Collins, 35 S.W.3d 582, 585 (Tenn. Crim. App. 2000)). The defense has the burden of showing "the degree to which the impediments to discovery hindered trial preparation and defense at trial." State v. Brown, 836 S.W.2d 530, 548 (Tenn. 1992). "Generally speaking, the exclusion of the evidence is a drastic remedy and should not be implemented unless there is no other reasonable alternative." State v. Smith, 926 S.W.2d 267, 270 (Tenn. Crim. App. 1995) (citing State v. House, 743 S.W.2d 141, 147 (Tenn. 1987)). Additionally, this court has previously held that "evidence should not be excluded except when it is shown that a party is actually prejudiced by the failure to comply with the discovery order and that the prejudice cannot be otherwise eradicated." State v. Garland, 617 S.W.2d 176, 185 (Tenn. Crim. App. 1981).

The Defendant was convicted of violating Tennessee Code Annotated section 39-17-417 for the knowing sale or delivery of a controlled substance. The Drug-Free Zone Act provides in pertinent part that "[a] violation of [section] 39-17-417 . . . that occurs . . . within one thousand feet . . . of the real property that comprises a . . . recreational center or park shall be punished one (1) classification higher than is provided in [section] 39-17-417(b)-(i) for such violation." See T.C.A. § 39-17-432(b)(1). A drug-free zone violation is not a separate offense and is not an essential element of the drug offense; rather, the

violation allows for increased punishment for a defendant's conviction. State v. Tate, No. E2014-01191-CCA-R3-CD, 2015 WL 2400718, *6 (Tenn. Crim. App. May 20, 2015) (holding that a single sale of cocaine that occurred in two overlapping drug-free zones resulted in a single conviction, not two separate convictions). "Both the caption of the [Drug-Free Zone] Act and the policy statement set forth in the subsection (a) of the Act reflect the purpose of the legislature, not to create a new offense, but rather to create [drug-free zones] by enhancing penalties for violations of T.C.A. § 39-17-417 occurring inside the zones." State v. Smith, 48 S.W.3d 159, 168 (Tenn. Crim. App. 2000).

Here, the Defendant made a discovery request to the State and, as part of the State's response to the discovery request, the Defendant received a map showing one park, the Richard Williams Park, located within 1,000 feet of the location of the drug exchange. At trial, the State introduced a new map which was not produced during discovery. The new map showed two parks, the Richard Williams Park and the Oldfield Community Park, both located within 1,000 feet of the exchange.

After considering argument from counsel and examining both maps, the trial court admitted the State's new map into evidence. The trial court found that the Defendant was on notice of the second park's existence because the park was discussed during the preliminary hearing. The trial court also noted that the indictments did not specify which park was being qualified as a drug-free zone, and that the Defendant did not request a bill of particulars requiring the State to specify which park was being used to determine the drug-free zone for each offense.

The Defendant argues that "the difference in the maps was detrimental to [his] defense because the parks were what was [sic] needed to establish the [d]rug-[f]ree [z]one requirement of [the Defendant's] subsequent sentencing." He further argues that he "had prepared the defense based on the only park on the only map provided to [him] as a part of discovery" and that, as a result, "[his] trial preparation and trial defense had been hindered." However, the Defendant failed to present any evidence, testimony, or authority challenging the drug-free zone classification of either park at trial or sentencing. Moreover, the plain language of the Drug-Free Zone Act indicates only one park is necessary to establish a "drug-free zone." Because the Defendant has failed to show the degree that the delayed disclosure of this evidence hindered his defense or any resulting prejudice, he is not entitled to relief. See Brown, 836 S.W.2d at 548.

**III. Denial of Motion to Dismiss.** The Defendant also contends that the trial court erred by denying his motion to dismiss the indictments. The Defendant does not challenge specific findings of the trial court; however, he claims that his sentences are unconstitutional and grossly disproportionate because they subject him to "cruel and unusual punishment" under the Eighth Amendment of the United States Constitution and

Article I, Section 16 of the Tennessee Constitution. The Defendant also argues that the shorter sentences he received for his prior felony convictions should be considered as part of the proportionality analysis. The State argues that the trial court did not err by denying the Defendant's motion to dismiss the indictments because his prior sentences do not impact the proportionality review and because the Defendant's current sentences do not raise an inference of gross disproportionality.

To be clear, our law requires a career offender to serve the maximum sentence for the offense, which in this case was a sentence of thirty years for the Class B felony and a sentence of fifteen years for the Class C felony. See T.C.A. §§ 40-35-108(c), 40-35-112(c)(2), 40-35-112(c)(3). Accordingly, the trial court did not err by sentencing the Defendant to the mandatory maximum sentence.

The Defendant acknowledges the mandatory maximum sentence required by law to be imposed in this case and does not challenge his status as a career offender. He argues instead that his sentence is unconstitutional in comparison to previous sentences he received for prior felony convictions. He asserts that "going from Range I, split confinement sentences to being required to serve 30 years at 100% is grossly disproportionate."

As an initial matter, the record does not contain copies of the transcripts from the sentencing hearing or the motion for new trial hearing, both of which are necessary for this court to conduct meaningful appellate review of this issue. It is the duty of the Defendant to prepare a record which conveys a fair, accurate, and complete account of what transcribed in the trial court with respect to the issues which form the basis of the appeal. Tenn. R. App. P. 24(b); State v. Miller, 737 S.W.2d 556, 558 (Tenn. Crim. App. 1987). In the absence of an adequate record on appeal, this court must presume that the trial court's rulings were supported by sufficient evidence. Vermilye v. State, 584 S.W.2d 226, 230 (Tenn. Crim. App. 1979). Based on our review of the limited record before us, however, the Defendant is not entitled to relief. In his brief, the Defendant makes bare assertions that his sentences "have not been graduated and proportionate" and were "grossly disproportionate . . . to the crime." Significantly, he does not avail himself of the twenty-four-hour merger rule, see T.C.A § 40-35-108(b)(4), or provide any other basis for determining that his thirty-year sentence was disproportionate to his offense. We have previously rejected an Eighth Amendment "cruel and unusual punishment" sentencing challenge in a factually similar case and noted that "the severity of the appellant's punishment is the direct result not merely of an isolated instance of possession inside a [drug-free zone] . . . but of a pattern of drug dealing evidenced by [the appellant's] seven prior convictions of felony drug offenses and his consequent status as a career offender." Smith, 48 S.W.3d at 172 (holding that an effective sentence of sixty years of incarceration in accordance with the Drug-Free Zone Act and the defendant's

career offender status for possession of 0.5 grams or more of cocaine with intent to sell was not cruel and unusual punishment). Moreover, this court upheld the constitutionality of increased sentences for career offenders, despite disparities between their current and previous sentences. See State v. Artez L. Moreis, No. W2002-00474-CCA-R3-CD, 2003 WL 1860537, at *10-11 (Tenn. Crim. App. Apr. 2, 2003) (holding that a career offender's fifteen-year sentence was not cruel and unusual punishment when his prior sentences ranged from three to eight years). Based on his uncontested status as a career offender, the Defendant was properly sentenced to the mandatory maximum sentence. His sentence does not constitute cruel and unusual punishment, and he is not entitled to relief.

        **IV.  Sufficiency of the Evidence.**  The Defendant next challenges the sufficiency of the evidence supporting his convictions for the sale or delivery of a controlled substance.  He contests the sufficiency of the video evidence depicting the exchange, and claims that "[t]he only evidence that ties the Defendant to the crack cocaine is the confidential informant."  The State responds that a rational juror could conclude that the Defendant provided cocaine to the CI in a drug-free zone, and that the jury "did not exceed the scope of its fact finder ability by finding that [the] [i]nformant was a credible witness."

        When considering the sufficiency of the evidence on appeal, the State is entitled to the strongest legitimate view of the evidence and all reasonable inferences which may be drawn from that evidence.  State v. Davis, 354 S.W.3d 718, 729 (Tenn. 2011) (citing State v. Majors, 318 S.W.3d 850, 857 (Tenn. 2010)).  When a defendant challenges the sufficiency of the evidence, the standard of review applied by this court is "whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  Jackson v. Virginia, 443 U.S. 307, 319 (1979).  Similarly, Rule 13(e) of the Tennessee Rules of Appellate Procedure states, "Findings of guilt in criminal actions whether by trial court or jury shall be set aside if the evidence is insufficient to support the finding by the trier of fact beyond a reasonable doubt."  "Because a verdict of guilty removes the presumption of innocence and raises a presumption of guilty, the criminal defendant bears the burden on appeal of showing that the evidence was legally insufficient to sustain a guilty verdict."  State v. Hanson, 279 S.W.3d 265, 275 (Tenn. 2009) (citing State v. Evans, 838 S.W.2d 185, 191 (Tenn. 1992)).

        Guilt may be found beyond a reasonable doubt where there is direct evidence, circumstantial evidence, or a combination of the two.  State v. Sutton, 166 S.W.3d 686, 691 (Tenn. 2005); State v. Hall, 976 S.W.2d 121, 140 (Tenn. 1998).  The standard of review for sufficiency of the evidence "'is the same whether the conviction is based upon direct or circumstantial evidence.'"  State v. Dorantes, 331 S.W.3d 370, 379 (Tenn. 2011)

(quoting Hanson, 279 S.W.3d at 275). The jury as the trier of fact must evaluate the credibility of the witnesses, determine the weight given to witnesses' testimony, and reconcile all conflicts in the evidence. State v. Campbell, 245 S.W.3d 331, 335 (Tenn. 2008) (citing Byrge v. State, 575 S.W.2d 292, 295 (Tenn. Crim. App. 1978)). Moreover, the jury determines the weight to be given to circumstantial evidence and the inferences to be drawn from this evidence, and the extent to which the circumstances are consistent with guilt and inconsistent with innocence are questions primarily for the jury. Dorantes, 331 S.W.3d at 379 (citing State v. Rice, 184 S.W.3d 646, 662 (Tenn. 2006)). When considering the sufficiency of the evidence, this court shall not substitute its inferences for those drawn by the trier of fact. Id.

The Defendant was convicted of sale or delivery of cocaine within 1,000 feet of a park on two separate occasions. In order to sustain the convictions for these offenses, the State was required to prove beyond a reasonable doubt that the Defendant knowingly sold or delivered cocaine. See T.C.A. § 39-17-417(a)(2)-(3). A violation of subsection (a) with respect to 0.5 grams or more of cocaine is a Class B felony, and a violation of subsection (a) with respect to 0.5 grams or less of cocaine is a Class C felony. Id. §§ 39-17-417(c)(1), 39-17-417(c)(2)(A). In addition, the Drug-Free Zone Act states that a violation of T.C.A. § 39-17-417 "that occurs on the grounds or facilities of any school or within one thousand feet (1,000) of the real property that comprises a public or private elementary school, middle school, secondary school, preschool, child care agency, or public library, recreational center or park shall be punished one (1) classification higher than is provided in § 39-17-417(b)-(i) for such violation." Id. § 39-17-432(b)(1). It is significant to note that the heightened classification, however, did not subject the Defendant to additional incarceration. Id. § 39-17-432(b)(3) (stating that defendants are only subject to additional fines for drug sales occurring within 1,000 feet of parks); See State v. Ronald Turner, E2016-00790-CCA-R3-CD, 2017 WL 1379999, at *1-10 (Tenn. Crim. App. Apr. 13, 2017) (As of the date this opinion was filed, no permission to appeal to the Tennessee Supreme Court has been filed).

Viewed in the light most favorable to the State, we conclude that there was sufficient evidence to support the Defendant's convictions. The proof established that Officer Aycocke thoroughly searched the CI before both controlled drug purchases. Officer Aycocke followed the CI to 270 East Lincoln and observed him enter the Defendant's house. When the CI left the Defendant's house, Officer Aycocke again followed the CI and continuously observed him until he arrived at a prearranged location. After each exchange, the CI promptly turned over drugs to Officer Aycocke, which were later determined to be crack cocaine. Both Officer Aycocke and the CI testified about each exchange and the procedures that were followed. Video recordings and still images from both purchases were admitted into evidence and shown to the jury. The jury also heard testimony that both controlled drug purchases occurred within 1,000 feet of two

public parks.

In challenging the sufficiency of the convicting evidence, the Defendant is essentially attacking the credibility of the CI and the weight of the video evidence presented at trial. However, the jury determines the weight and credibility to be given to the testimony of witnesses and reconciles all conflicts in the evidence. Bollin v. State, 405 S.W.2d 768, 771 (Tenn. 1966). Moreover, we note that "our duty on appeal of a conviction is not to contemplate all plausible inferences in the Defendant's favor, but to draw all reasonable inferences from the evidence in favor of the State." State v. Sisk, 343 S.W.3d 60, 67 (Tenn. 2011). Based on the evidence, a rational juror could conclude beyond a reasonable doubt that the Defendant knowingly sold or delivered cocaine within a drug-free zone. Accordingly, the Defendant is not entitled to relief.

**V. Thirteenth Juror.** The Defendant similarly argues that the trial court failed to properly weigh the evidence in its role as the thirteenth juror. The State disagrees.

Tennessee Rule of Criminal Procedure 33(d) states that "the trial court may grant a new trial following a verdict of guilty if it disagrees with the jury about the weight of the evidence." See State v. Carter, 896 S.W.2d 119, 122 (Tenn. 1995) (holding that the trial court has a duty to serve as the thirteenth juror). Only if the record contains statements by the trial judge indicating disagreement with the jury's verdict or evidencing the trial judge's refusal to act as the thirteenth juror may an appellate court reverse the trial court's judgment. Id. Otherwise, appellate review is limited to sufficiency of the evidence pursuant to Rule 13(e) of the Tennessee Rules of Appellate Procedure. State v. Burlison, 868 S.W.2d 713, 718-19 (Tenn. Crim. App. 1993). If the reviewing court finds that the trial judge has failed to fulfill his or her role as thirteenth juror, the reviewing court must grant a new trial. State v. Moats, 906 S.W.2d 431, 435 (Tenn. 1995).

The record shows that the trial court agreed with the jury's verdict as the thirteenth juror. Therefore, this issue is not subject to appellate review.

## CONCLUSION

After a thorough review of the record, we reverse and vacate the Defendant's convictions and remand to the trial court for dismissal of the charges.

_____
CAMILLE R. McMULLEN, JUDGE