# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
December 7, 2011 Session

## STATE OF TENNESSEE v. IAN ZRAIK MCCLELLAN

**Direct Appeal from the Criminal Court for Davidson County**
**No. 2010-B-1317      Mark J. Fishburn, Judge**

_____

**No. M2011-00622-CCA-R3-CD - Filed February 15, 2012**

_____

The Defendant, Ian Zraik McClellan, pled guilty to an indictment against him. The State alleged that the indictment charged the Defendant with aggravated vehicular homicide, and the Defendant contended the indictment sufficiently charged him with only vehicular homicide. At the time he entered his plea, the Defendant agreed to allow the trial court to determine whether the indictment sufficiently charged him with aggravated vehicular homicide. After a hearing, the trial court determined the indictment sufficiently charged the Defendant with aggravated vehicular homicide. On appeal, the Defendant contends first that the indictment was not sufficient to charge him with aggravated vehicular homicide and only sufficiently charged him with vehicular homicide and second that his guilty plea was not validly entered. After a thorough review of the record and applicable authorities, we affirm the Defendant's conviction for aggravated vehicular homicide.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the Court, in which D. KELLY THOMAS, JR., and JEFFREY S. BIVINS, JJ., joined.

Michael J. Flanagan, Nashville, Tennessee, for the appellant, Ian Zraik McClellan.

Robert E. Cooper, Jr., Attorney General and Reporter; Brent C. Cherry, Assistant Attorney General; Victor S. Johnson, III, District Attorney General; Megan King and Kyle Anderson, Assistant District Attorneys General, for the appellee, State of Tennessee.

## OPINION
### I. Facts

This case arises from a traffic accident, during which Katie Kerr was killed. For his

involvement in the accident, the Defendant was indicted on November 9, 2009.

## A. Indictment and Guilty Plea

The grand jury returned a three count indictment, the first count charging the Defendant with vehicular homicide for driving under the influence while having been convicted in Alabama on September 24, 2007, and also while having a blood alcohol content of .20% or more. In count two, the Defendant was charged with vehicular homicide while having previously been convicted of DUI in Alabama on May 9, 2007, and also while having a blood alcohol content of .20% or more. Count three of the indictment alleged that the Defendant had been convicted of DUI on September 24, 2007 and May 9, 2007.

On May 13, 2010, the Defendant moved to dismiss the three counts in the indictment, alleging that each of the counts was faulty. He asserted that Tennessee Code Annotated section 39-12-218(c) required that the prior convictions should be contained in a separate count of the indictment rather than in the charging instrument as was done in his case.

On May 28, 2010, the State filed a superceding indictment, charging the Defendant with multiple offenses. Count one alleged that the Defendant:

> on or about the 6th day of May, 2009, in Davidson County, Tennessee and before the finding of this indictment, recklessly did kill Katie Kerr by the operation of a motor vehicle, the killing of Katie Kerr being the proximate result of [the Defendant's] intoxication as operator of the motor vehicle in violation of Tennessee Code Annotated § 39-13-218, against the peace and dignity of the State of Tennessee.

Count two alleged that the Defendant:

> on or about the 6th day of May, 2009, in Davidson County, Tennessee and before the finding of this indictment, did drive or was in physical control of an automobile, or other motor driven vehicle, under the influence of an intoxicant while the alcohol concentration in his blood was twenty hundredths of one percent (.20%) or more, in violation of Tennessee Code Annotated § 39-13-218(a)(3), and against the peace and dignity of the State of Tennessee.

Count three alleged that the Defendant:

> on or about the 6th day of May, 2009, in Davidson County, Tennessee and before the finding of this indictment, had been previously convicted of

driving under the influence in the following case [N1834604 in Limestone County Alabama on 9/17/2009].

Count four alleged that the Defendant:

on or about the 6th day of May, 2009, in Davidson County, Tennessee and before the finding of this indictment, had been previously convicted of driving under the influence of an intoxicant in the following case [07-7648 in Limestone County, Alabama on 9/24/2007].

Count five of the indictment alleged the Defendant:

on or about the 6th of May, 2009, in Davidson county, Tennessee and before the finding of this indictment, had been previously convicted of driving under the influence of an intoxicant in the following case [TR 2006-10241 in Limestone County Alabama on 5/9/2007].

The Defendant pled not guilty to these offenses on June 11, 2010. On November 15, 2010, the trial court dismissed the original indictment and a jury was selected and impaneled. After the indictment was read to the jury, the Defendant's counsel informed the trial court that the Defendant was going to plead guilty to the indictment "as it[']s drafted." He asserted that jeopardy had attached, since the jury was impaneled. He further posited that the indictment did not properly charge him with aggravated vehicular homicide and only adequately charged vehicular homicide.

The trial court explained to the Defendant's counsel that it may not agree with his argument and may find that the indictment sufficiently charged aggravated vehicular homicide. Defendant's counsel informed the court that the Defendant wanted to plead guilty either way and that they would appeal a ruling adverse to their position. The Defendant's counsel informed the court that the Defendant was going to "plead open" to the indictment "and then the issue will be, what has he ple[d] to."

The Defendant's attorney then said "Your Honor, to the entire indictment, 2010-B-1317, as returned by the Davidson County Grand Jury, the defendant pleads guilty." After so doing, his counsel argued that the indictment was not valid. He asserted that Count One charged vehicular homicide, and Count Two charged DUI. The other Counts, Three, Four, and Five, "just point[ed] out that on the day of this event the defendant had been previously convicted of DUI, that's [listed] in each count." He compared this case to a felony DUI case, arguing that there had to be an allegation of vehicular homicide combined with the listing of the felony, not just a listing of the three prior DUI convictions in separate counts.

The State countered that the statutory scheme for DUI convictions is different than that for aggravated vehicular homicide. Further, it contended that, after the Defendant filed his motion to dismiss the first set of indictments, the State's Attorney had read the statute. The attorney then filed the superceding indictment based upon the statute, which comported with the way that the Defendant said the indictment should read in his motion to dismiss. The trial court gave the parties until the next morning to research the issue further, but it went on to hear from the Defendant regarding his guilty plea.

The Defendant was sworn and said he understood that he and the State were in a dispute about whether the indictment charged aggravated vehicular homicide or vehicular homicide. The Defendant agreed that he and his counsel had discussed this as a trial strategy for some time and that they had planned to argue this point, a plan with which he agreed. Upon questioning by the trial court, the Defendant agreed he understood that the ultimate decision about whether the indictment sufficiently alleged aggravated vehicular homicide rested with the trial judge. The parties discussed that the Defendant had "ple[]d guilty to the entire indictment." They asserted the Defendant had said, "I'm pleading guilty to this whole indictment."

The trial court then addressed the Defendant:

> THE COURT: But you understand Mr. McClellan, that you have entered pleas of guilty, that depending on the Court's interpretation of the case law and the way the indictment is drafted, you could have plead guilty to either vehicular homicide or aggravated vehicular homicide.

> [THE DEFENDANT]: Yes, sir.

The trial court then asked the Defendant a series of questions about whether he understood the rights he was waiving as a result of entering his plea. The Defendant said he was not disputing the facts that the State asserted were true but that he was making a legal argument based upon the pleadings.

The parties reconvened the following day to discuss the legal sufficiency of the indictment. The Defendant maintained that because the indictments omitted the language "and thus has committed the offense of aggravated vehicular homicide" it was legally insufficient to charge aggravated vehicular homicide. The State argued that the purpose of the indictment was to put the Defendant on notice of what charges he was facing so he can properly prepare and, here, the Defendant was clearly on notice. The State noted that the correct statute was provided in the indictment and that the indictment clearly listed each of the enhancement factors upon which it was seeking the vehicular homicide be classified as

-4-

"aggravated," namely his three prior DUI convictions and that his blood alcohol content was .20% or more at the of the accident in this case. The trial court noted that, while each of the four prior conviction counts did not include the language that the Defendant asserted was necessary, they each referenced the aggravated vehicular homicide statute. To this, the Defendant responded that he agreed he had been put on notice but that the indictment was still not valid because it did not relate the three counts alleging his previous DUI convictions to the count alleging vehicular homicide.

The trial court ruled that the indictments were sufficient to allege aggravated vehicular homicide, finding:

> The Court has reviewed the matter, it starts with the proposition TCA 40-13-202, which requires that the indictment state the facts constituting the offense in ordinary and concise language. Count one clearly does that because it states that Mr. McClellan was operating a motor vehicle that killed Katie Kerr and that her death was the proximate result of his intoxication while operating the motor vehicle; that clearly sets forth the requirements of vehicular homicide. It does not set forth the requirements of aggravated vehicular homicide.
>
> Count two clearly establishes again vehicular homicide in that . . . the way it's indicted is . . . that he was .20 or above at the time he killed her using it as an enhancement factor, I think you're correct on that [State's Attorney] when you're reading the language as it is actually contained.
>
> Counts three, four and five do not under 40-13-202 allege a criminal offense. There is nothing in count three, four or five, other than an allegation that [the Defendant] had a prior conviction for DUI on the date of May 6th, 2009, and that it sets forth the conviction.
>
> Then, when you look at the TCA 39-13-218(C), it appears in that provision of the statute that the legislature has modified the general - the specific language of that subsection, the legislature has modified that general requirements for drafting the indictment as it relates to aggravated vehicular homicide; that statute says that you will first try the person on vehicular homicide, which count one, the allegations set forth vehicular homicide, it cites the wrong statutory provision, it cites 218 rather than 213, but factual allegations set forth in count one are vehicular homicide. The statute then goes on to say that you will put in separate counts the enhancers, if you will, the prior convictions or .20 blood alcohol level or greater in a separate count. In

looking at that statutory provision, the facts that would be required to be alleged by the 40-13-202 would be the prior conviction or the fact that that person registered .20 or above - and/or .20 or above, and the State has done that in compliance with the statute. So, if defendant were found guilty, [the Defendant] in this case, then you would have a separate trial on the other counts; therefore, if 39-13-218(C) does in fact modify the general requirements of the indictment statute 40-13-202, then he State has complied with the modified requirements as specified in 39-13-218(C). And the Court finds that 39-13-218(C) is intended because it's not in any other statutory provision, I mean, it's not in your general homicide, it's not in your – I'm not sure it's any of them as the way it's worded in the aggravated vehicular homicide as to how you're to perceive what the trial of the case or the issuing of the indictment, it seems to be pretty limited to the aggravated vehicular homicide. There are other provisions and other statutes that generally deal with bifurcated trials, but not as specifically as to the issuing of the indictment as it is in the aggravated vehicular homicide, but I guess moreover and more importantly, you have to look at the constitutional requirements of due process and what it mandates being the purpose of the indictment and the content and what should be contained in the indictment of the purpose of why the indictment issues, and they are three-fold; one is to place the [D]efendant on notice of the charges upon which he's being called to answer, that's not an issue in this case, and I think it does that. It does it in several ways; it states on the cover sheet that counts one through five relate to aggravated vehicular homicide. And none of the case law, I think specifically State versus Nixon, . . . the Court held that the cover sheet, which is just counts one through five, right above where the foreperson signs, counts one through five, aggravated vehicular homicide, is incorporated by reference into the body of the indictment and it . . . is considered a part of the indictment. Each of the five counts specifically allege 39-13-218, which is the vehicular homicide statute. Moreover the [D]efendant's original motion to dismiss acknowledges that it appears to be charging vehicular homicide, but it's not charged properly pursuant to 39-13-218(C).

The second requirement – constitutional requirement is to place the subject matter jurisdiction squarely within the court that is – that it's before and it does that. And finally, constitutional requirements for due process is to ensure that the defendant is not subjected to double jeopardy, which this case clearly does, through the provisions in count one, specify a specific date, a specific victim and a specific means of having caused her death. I don't think there's any concern or question that [the Defendant] could be subjected to

-6-

double jeopardy.

The trial court concluded that, because the indictment sufficiently alleged aggravated vehicular homicide, the Defendant had entered his plea to aggravated vehicular homicide.

### B. Sentencing Hearing

The trial court conducted a sentencing hearing, where the following evidence was presented: Lee Kerr, the victim's father, testified that his daughter, Katie Kerr, was twenty-three when she was killed. He recalled how the victim was a wonderful child, even from infancy. He said she was popular among her peers and had a great attitude, always giving people the benefit of the doubt and pulling for the underdog. Kerr recalled that Katie loved animals, spent countless hours with her horse and in her grandfather's barn. He said Katie was active in sports, including dance and cheerleading, and she also played the piano and violin. Kerr also testified that Katie achieved the dean's list every semester while in college, where she was an English major, International Studies minor, with an emphasis in Spanish. Kerr recounted how Katie worked as a waitress while enrolled in college and that she also worked at a small Mexican grocery so that she could practice her Spanish. She also volunteered teaching Spanish-speaking students English at a local elementary school. Kerr asked for the Defendant to receive the maximum sentence.

Ryan Rayburn testified he was a bartender and musician, who lived in Nashville, Tennessee. Rayburn recalled that he became acquainted with the Defendant when the Defendant began dating Rayburn's friend. Rayburn recounted how he and the Defendant planned to celebrate Cinco de Mayo, on May 5, 2009. The two spoke several times during the day, and then Rayburn met the Defendant at a Krystal, so the Defendant could follow Rayburn back to Rayburn's house. After Rayburn and the Defendant returned to Rayburn's house, at around 5:30 p.m., Rayburn noticed that the Defendant seemed to be slurring his words "a bit." The Defendant told Rayburn that he had consumed approximately five margaritas at lunch earlier in the day. The Defendant had one or two beers while they were at Rayburn's house waiting on Rayburn's fiancé.

Rayburn testified that, when it was time to leave, he offered to drive the Defendant's car because he felt as if the Defendant had consumed too much alcohol to drive safely. Rayburn was under the assumption that the Defendant's girlfriend was going to meet up with the Defendant and drive him home. When they arrived in downtown Nashville, Rayburn returned the Defendant's keys to him, believing that the Defendant's girlfriend would use them to drive the Defendant home. The two men proceeded to a bar, "Buckwild," where they drank an estimated five beers and two or three shots each. Rayburn recalled that the

Defendant began leaving for periods of time, and, by the time Rayburn's girlfriend arrived at 10:00 p.m., the Defendant was gone. He reappeared later, and Rayburn told the Defendant to stop "disappearing." Rayburn noted that the Defendant was "obviously very drunk," slurring his speech and swaying, so Rayburn got the Defendant some water so he would not feel as sick the following day. Rayburn said he never saw the Defendant's girlfriend arrive and that the Defendant "disappeared" again around midnight, and he did not see him again that evening. Rayburn said he and his fiancé left together, and she drove him home.

On cross-examination, Rayburn testified that he also consumed five or six beers and two or three shots. He agreed that he was also intoxicated that night.

Elton Gray Smith testified that he called 911 on May 6, 2009, after he saw a car traveling east in the fast lane of the westbound part of Interstate 40. The vehicle hit a car traveling westbound head-on, prompting Smith to call 911. On cross-examination, Smith testified that he did not stop at the scene of the accident because he was so far beyond the accident he did not think it would be safe to attempt to return to the scene.

Kimberly Pruitt testified that she closed the restaurant where she worked at around 2:00 a.m. on May 6, 2009. While she was traveling home on Interstate 40, she was following an 18-wheeler that slowed down abruptly and illuminated its hazard lights. Unsure of what was happening and afraid to switch lanes, she slowed her car down behind the truck. After doing so, a man approached her car and told her that there had been an accident and that there were people in need of assistance. Pruitt pulled over her car, and went to see if she could help the Defendant, who was the driver of one of the vehicles. She described the Defendant as "[r]anting and raving" and "cussing and yelling" and stomping his foot. Pruitt recalled that the Defendant looked "very angry" and walked around to the front of his Jeep Cherokee, looked at it, and then looked at the cars and trucks passing by them. Pruitt said the Defendant said, "Look at what that bitch did to my truck."

Pruitt went to look for the other car, which she did not see immediately. She finally came upon a green, four-door vehicle, and she could see the driver. She started banging on the hood of the car and then attempted unsuccessfully to open the driver side door. She said, with the lights of slowly passing by cars, she saw that the back window was open. Pruitt reached into the car from the back window and felt the victim's shoulder and neck. She said she could immediately tell the victim's neck was broken. She then noted that the victim's eyes were open and that it appeared that the victim was dead. She noticed that there was a child's carseat in the back of the car, but could not open the car doors. Pruitt crawled across the hood and into the car to ensure there was no child in the carseat. She discovered that the carseat was filled with towels and there was no child in the car.

Pruitt recalled that the police arrived but they stopped at the Jeep Cherokee. She went to notify police the victim needed assistance when another onlooker advised her to stay away from the Defendant because he was "belligerent and very difficult to deal with." Pruitt said she never heard the Defendant express any kind of remorse or concern for the victim, and he never asked about or checked on her.

On cross-examination, Pruitt agreed she did not have any medical training and did not know whether the Defendant suffered any injuries. On redirect examination, she said the Defendant was, however, walking around the scene of the accident.

Harold Burke testified he responded to this accident as a patrol officer who investigated traffic accidents. At the scene he noted that two cars were involved in the accident, a Nissan Sentra and a Jeep Cherokee. He approached the victim's vehicle and noted that she was deceased. Officer Burke saw that there were tire marks and a "gouge mark" in the roadway, which indicated to him the point of impact. He also noted that there were scrape marks on the Defendant's vehicle from the victim's vehicle. The officer noted that the Defendant's vehicle did not leave any tire marks in the roadway, and there were no other indications that he made "any type of evasive action or tried to brake prior to the collision."

Officer Burke testified that, from looking at the scene, he was able to determine that the Defendant was traveling eastbound in the westbound lanes of Interstate 40 at the time of the collision. He was going the wrong direction on the interstate, and he impacted the victim's vehicle, which was traveling the right direction on the interstate. From the damage to the vehicles, the officer determined that the victim attempted unsuccessfully to avoid the accident. The officer testified that he found beer bottles in the Defendant's truck, some in tact and others that were broken. He said, however, that there was no indication that any of the bottles were open while the Defendant was driving.

Officer Burke testified that he went to the hospital to meet with the Defendant. When he arrived, another officer was present and said he had already offered the Defendant his Miranda warnings. The Defendant told Officer Burke that he had been driving from a gas station on his way to Columbia when the accident occurred. The Defendant was confused about the location of the accident, thinking he was near Columbia, Tennessee. The officer said it was apparent that the Defendant, who had slurred speech and bloodshot eyes, was still impaired, even though this was many hours after the accident.

Officer Burke said that his investigation revealed that this accident was the result of the Defendant traveling the wrong way on the interstate and that the accident was the Defendant's fault. The officer said he also received the blood kit performed on the

Defendant at the hospital, and the subsequent TBI report indicated that the Defendant's blood alcohol content was almost three times the legal limit, over .20%.

The Defendant made a statement in which he did not deny fault in causing the car accident. He expressed remorse and acknowledged that nothing he could say could make the situation easier for the victim's family. He said he had a daughter and that he felt guilty when he looked at her because he knew that there was a mother and father that no longer had their daughter. He said he was "very intoxicated" at the time of the accident and did not remember anything he said or did that evening. He acknowledged that he was an alcoholic and that he was receiving help. He said he had spent countless days grieving over what he had caused the victim's family. He said he was trying to tell his story to others to prevent this from happening to someone else.

The trial court found that the Defendant had pled guilty to aggravated vehicular homicide, a Class A felony. After considering enhancement and mitigating factors, the trial court sentenced the Defendant to twenty-two years in prison.

## II. Analysis

On appeal, the Defendant contends first that the indictment was not sufficient to charge him with aggravated vehicular homicide and only sufficiently charged him with vehicular homicide and second that his guilty plea was not validly entered.

### A. Sufficiency of Indictment

The Defendant contends that the indictment did not sufficiently allege that he committed the crime of aggravated vehicular homicide. He specifically takes issue with the fact that the three counts alleging his prior DUI convictions, counts three, four, and five, do not contain the language, "and thus has committed the offense of Aggravated Vehicular Homicide." He states that the absence of this language prevents these counts from relating to count one, the count by which he was convicted of aggravated vehicular homicide. The State counters that, while the indictment may have been more "artfully" drafted if it contained this language, it is not fatally defective.

An indictment must state the facts of the offense in ordinary and concise language "in such a manner as to enable a person of common understanding to know what is intended." *See* T.C.A. § 40-13-202. An accused is constitutionally guaranteed the right to be informed of the nature and cause of the accusation. *State v. Lindsey*, 208 S.W.3d 432, 437-38 (Tenn. Crim. App. 2006) (citing U.S. Const. amend. 6, 14; Tenn. Const. art. I, § 9; *see Wyatt v. State*, 24 S.W.3d 319, 324 (Tenn. 2000)). An indictment meets constitutional requirements

if it provides sufficient information to: (1) enable the accused to know the accusation to which an answer is required; (2) furnish the court an adequate basis for the entry of a proper judgment; and (3) protect the accused from double jeopardy. *State v. Hill*, 954 S.W.2d 725, 727 (Tenn. 1997). Further, an indictment is statutorily required to "state the facts constituting the offense in ordinary and concise language, without prolixity or repetition, in such a manner as to enable a person of common understanding to know what is intended, and with that degree of certainty which will enable the court, on conviction, to pronounce the proper judgment." *Id.* (citing T.C.A. § 40-13-202). An indictment need not conform to strict pleading requirements. *Hill*, 954 S.W.2d at 727.

In the case under submission, the Defendant asserts that the indictment failed to meet the first element articulated in *Hill*, i.e., failed to enable him to know the accusation to which an answer is required. We find this argument unpersuasive. When the Defendant filed his motion to dismiss based upon the first indictment filed against him, he contended that it did not adequately allege aggravated vehicular homicide. He was clearly aware at that time that the State sought to charge him with aggravated vehicular homicide. The State filed a superceding indictment in an effort to address the Defendant's concern and comply with the aggravated vehicular homicide statute. After the jury was empaneled, the Defendant's attorney stated that their strategy was to again allege that the superceding indictment was insufficient to allege aggravated vehicular homicide. He informed the trial court that he had, in fact, been put on notice but that the indictment was still not valid.

Count one of the indictment references the aggravated vehicular homicide statute, and each of counts three, four, and five, list the Defendant's prior DUI convictions upon which the State was relying to assert the charge of aggravated vehicular homicide. The Defendant clearly had notice that the State sought to charge him with aggravated vehicular homicide. Further, the counts in the indictment, taken together, furnish the court an adequate basis for the entry of a proper judgment and protect the accused from double jeopardy. *See Hill*, 954 S.W.2d at 727. We conclude that, while it would be a better practice to include the language the Defendant points out was omitted, the indictment is legally sufficient to allege the crime of aggravated vehicular homicide. The Defendant is not entitled to relief on this issue.

### B. Guilty Plea

The Defendant next contends that his guilty plea is not valid because there was no factual basis submitted to support the plea of guilty. The State counters that the Defendant knowingly and voluntarily entered his guilty plea.

The Defendant contests the validity of his plea on the basis that the State did not articulate a factual basis for the plea. To provide perspective to the events as they occurred,

-11-

the State appeared in court the day the guilty plea was entered under the assumption that there would be a trial. The parties engaged in jury voir dire, and a jury was impaneled. The Defendant, however, had no intention of taking the case to trial, and his "strategy" was to have the jury impaneled so that jeopardy attached and then plead to the indictment, which he thought was insufficient to charge him with aggravated vehicular homicide. To the surprise of the State and the trial court, the Defendant stated his intention to enter a plea of guilty to the indictment as drafted. The State and the trial court were, therefore, not prepared for a guilty plea and the standard guilty plea procedures were not scrupulously followed. One of the procedures not followed was that the State did not articulate the factual basis supporting the plea. The parties instead engaged in much discussion about whether the indictment alleged aggravated vehicular homicide or vehicular homicide.

In *State v. Lord*, this Court discussed the requirement of a factual basis to support a guilty plea. 894 S.W.2d 312, 316 (Tenn. Crim. App. 1994). In that case, we stated:

> First, we note that "[a] plea of guilty is more than a confession which admits that the accused did various acts; it is itself a conviction; nothing remains but to give judgment and determine punishment." *Blankenship v. State*, 858 S.W.2d 897, 903 (Tenn. 1993) (quoting from *Boykin v. Alabama*, 395 U.S. 238, 242, 89 S. Ct. 1709, 1711, 23 L. Ed. 2d 274 (1969)). Thus, it is the guilty plea, itself, that provides the basis for the conviction. *See McMann v. Richardson*, 397 U.S. 759, 766, 90 S. Ct. 1441, 1446, 25 L. Ed. 2d 763 (1970). Given this significant result from the entry of a guilty plea, the focus of the inquiry at a guilty plea hearing is on whether or not the plea is being voluntarily and intelligently made and the procedural requirements provided by *Mackey* and Rule 11, Tenn. R. Crim. P., insure that the record will show that such a plea occurs.

> In this context, the requirement that the record show a factual basis for the plea primarily exists to insure that the defendant's guilty plea is made with his understanding that his admitted conduct actually constitutes the offense with which he is charged or a lesser included one. *See McCarthy v. United States*, 394 U.S. 459, 466-67, 89 S. Ct. 1166, 1171, 22 L. Ed. 2d 418 (1969). In other words, the factual basis inquiry focuses upon what the defendant understands about the applicable law in relation to the facts he is admitting. Thus, upon the record showing that a guilty plea is voluntarily and understandingly being made, the guilty plea, by itself, is sufficient to support a conviction.

> In this respect, the existence of a factual basis may be shown by

-12-

numerous sources in the record, whether it be a prosecutor's statement of the evidence, live testimony or otherwise. *See Chamberlain v. State*, 815 S.W.2d 534, 540 (Tenn. Crim. App. 1990); *United States v. Goldberg*, 862 F.2d 101, 105 (6th Cir. 1988); *United States v. Darling*, 766 F.2d 1095, 1100 (7th Cir.), cert. denied, 474 U.S. 1024, 106 S. Ct. 579, 88 L. Ed. 2d 561 (1985).

*Id.*

In this case, we conclude that there is ample evidence that the Defendant's guilty plea was "made with his understanding that his admitted conduct actually constitutes the offense with which he is charged or a lesser included one." *See McCarthy*, 394 U.S. at 466-67. The State read the indictment that charged that the Defendant "recklessly did kill Katie Kerr by the operation of a motor vehicle, the killing of Katie Kerr being the proximate result of [the Defendant's] intoxication as operator of the motor vehicle in violation of Tennessee Code Annotated § 39-13-218." The remaining counts alleged that the Defendant's blood alcohol content was greater than .20% at the time of his arrest and that he had three prior DUI convictions. There was much discussion about whether the indictment was sufficient to charge aggravated vehicular homicide, and the Defendant acknowledged that he understood the State was asserting the Defendant was guilty of aggravated vehicular homicide. He stated that he did not contest the truth of the facts alleged against him but rather asserted that the Stated charged him with vehicular homicide and not aggravated vehicular homicide.The Defendant agreed to leave the final decision to the trial court. The Defendant clearly understood the applicable law in relation to the facts he was admitting. *See Lord*, 894 S.W.2d at 316. We conclude that, because the record proves that the Defendant's guilty plea was knowingly and voluntarily made, the guilty plea, by itself, is sufficient to support a conviction. *Id.*

## C. Defendant's Statement of Guilt

The Defendant mentions in passing that, "As indicated by the record, the Defendant never actually entered a plea of guilty himself. Counsel for the Defendant told the jury that the Defendant pleads guilty to the Indictment." He cites no law for the proposition that his own failure to say the words "guilty" made his guilty plea improperly entered. His failure to cite case law effectively waives this issue. Tenn. R. App. P. 10(b). Further, the Defendant agreed on multiple occasions that it was his desire to enter a guilty plea, and the trial court ensured as much by asking him again if that was his intention. When evaluating the knowing and voluntary nature of a guilty plea, the United States Supreme Court has held that "[t]he standard was and remains whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *North Carolina v. Alford*, 400 U.S. 25, 31 (1970). The court reviewing the voluntariness of a guilty plea must look to

the totality of the circumstances. *See State v. Turner*, 919 S.W.2d 346, 353 (Tenn. Crim. App. 1995); *see also Chamberlain v. State*, 815 S.W.2d 534, 542 (Tenn. Crim. App. 1990). The circumstances relevant to a guilty plea include:

> the relative intelligence of the defendant; the degree of his familiarity with criminal proceedings; whether he was represented by competent counsel and had the opportunity to confer with counsel about the options available to him; the extent of advice from counsel and the court concerning the charges against him; and the reasons for his decision to plead guilty, including a desire to avoid a greater penalty that might result from a jury trial.

*Blankenship v. State*, 858 S.W.2d 897, 904 (Tenn. 1993) (citing *Caudill v. Jago*, 747 F.2d 1046, 1052 (6th Cir.1984)). A plea resulting from ignorance, misunderstanding, coercion, inducement, or threats is not "voluntary." *Id.*

Considering the *Blakenship* factors, the Defendant's guilty plea herein was knowingly and voluntarily entered. He had been found guilty on three prior occasions of DUI evidencing his familiarity with criminal proceedings. He and his trial counsel decided that pleading guilty to the indictments as written was a good "strategy," believing that they had a good argument that the indictments insufficiently charged aggravated vehicular homicide. This was likely the Defendant's best option, given the strength of the State's case against him. The trial court meticulously ensured that the Defendant understood the consequences and ramifications of his guilty plea. We conclude that the Defendant's guilty plea was knowingly and voluntarily made. The Defendant is not entitled to relief on this issue.

### III. Conclusion

In accordance with the aforementioned reasoning and authorities, we conclude that the indictment charging the Defendant sufficiently alleged aggravated vehicular homicide. We further conclude that his guilty plea was properly entered. We, therefore, affirm his conviction.

_____
ROBERT W. WEDEMEYER, JUDGE