# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
Assigned on Briefs January 16, 2013

## GREGORY JUSTICE v. STATE OF TENNESSEE

### Appeal from the Criminal Court for Davidson County
No. 2007-D-3028     Steve R. Dozier, Judge

---

### No.  M2012-00183-CCA-R3-PC - Filed May 13, 2013

---

The Petitioner, Gregory Justice, appeals the Davidson County Criminal Court's denial of post-conviction relief from his jury convictions for possession with the intent to sell or deliver one-half gram or more of a controlled substance, facilitation of the sale of less than one-half gram of a controlled substance, and felonious possession of marijuana, and his concurrent sentences of fourteen years, five years, and three years, respectively.  The Petitioner contends that the convictions should be set aside and that he should be granted a new trial because (1) the count charging possession with the intent to sell or deliver more than one-half gram of a controlled substance was duplicitous, (2) he was denied his constitutional right to a trial by a jury and jury unanimity, and (3) trial counsel provided the ineffective assistance of counsel.  We affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

JOSEPH M. TIPTON, P.J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., J., and PAUL G. SUMMERS, SR.J., joined.

Jeremy W. Parham, Manchester, Tennessee, for the appellant, Gregory Justice.

Robert E. Cooper, Jr., Attorney General and Reporter; Clark B. Thornton, Assistant Attorney General; Victor S. (Torry) Johnson, III, District Attorney General; and Rachel Marie Sobrero, Assistant District Attorney General, for the appellee, State of Tennessee.

# OPINION

This court summarized the facts of the case in the Petitioner's appeal of his convictions:

At trial, the State established that on July 20, 2007, Detective Tim Szymanski of the Narcotics Division of the Metropolitan Nashville Police Department was working in an undercover capacity. As part of the investigation, Detective Szymanski was "going to areas of town and attempting to purchase narcotics from street-level narcotics dealers." As part of the investigation, Detective Szymanski wore a wire and was followed closely by surveillance units and arrest teams while he tried to make drug buys.

Around 6:00 p.m. that evening, Detective Szymanski pulled his unmarked patrol car into a vacant lot located behind a liquor store on Eleventh Avenue near Jefferson Street, an area that Detective Szymanski described as a known drug area. The car was approached by Michael White, who asked Detective Szymanski what he needed. Detective Szymanski informed Mr. White that he was looking for twenty dollars worth of cocaine.

Mr. White told the detective that he could get the cocaine, so Detective Szymanski gave Mr. White a previously photocopied twenty dollar bill. Near that same time, Defendant Quartez Dryden walked up to the car and wanted to know if Detective Szymanski needed anything. Detective Szymanski told Defendant Dryden that he was already getting a "twenty" from Mr. White. Defendant Dryden insisted that Mr. White would not be able to get the cocaine. Defendant Dryden then offered to get the detective a "better quality and quantity of dope."

Defendant Dryden walked over to where Defendant [Marnita N.] Roberson was sitting, about twenty-five yards away. Defendant Roberson looked at the detective and "gave a head nod." Defendant Dryden walked back to the car and told the detective that she would not "let the dope go without the money." Detective Szymanski retrieved the twenty dollar bill from Mr. White and gave it to Defendant Dryden.

Defendant Dryden returned to the area where Defendants Roberson and Justice were sitting and the three formed a "huddle." Detective Szymanski could see all three people were "handing things off." He also saw "Dryden's hands come together with Roberson's and then [Justice's] hands come

-2-

together" with Defendant Dryden's. Detective Szymanski admitted that he could not see exactly what happened in the huddle. When Defendant Dryden returned to the car, he had a "cupped" hand and got into the car. In the car, Defendant Dryden held out his hand to reveal "twenty dollars worth of street-level crack cocaine." There was one large crack rock "with some crumbs around it" that appeared to have been broken off [] a larger rock.

At that time, Detective Szymanski gave the "takedown" signal over his wire. Defendant Dryden cupped his hand again and threw the white rocks that were in his hand onto the ground. When the other officers arrived, the suspects were arrested. Detective Szymanski was able to recover the crack that had been thrown to the ground. At trial, the detective identified the evidence that was recovered from Defendant Dryden. The case number assigned to the evidence corresponded to the complaint number on the arrest report.

Detective Michael Donaldson, another member of the Narcotics Unit of the Metropolitan Nashville Police Department, was also working with Detective Szymanski on July 20, 2007. Detective Donaldson was stationed in a car in a vacant parking lot about fifty feet away from Detective Szymanski's car. He could hear the conversations over the wire. Detective Donaldson saw Mr. White approach the car and heard Detective Szymanski ask for a "twenty." Detective Donaldson also heard Defendant Dryden speaking to the detective. Defendant Dryden told Detective Szymanski that Mr. White was going to sell him [fake drugs].

Detective Donaldson confirmed that Defendant Dryden claimed that he could get the "dope" from his sister. Detective Donaldson saw Defendant Dryden approach Appellant and Defendant Roberson. There was no one "within fifteen to twenty feet" of them. Defendant Dryden returned to Detective Szymanski's car and told him that he needed the money. Detective Donaldson then saw Defendant Dryden return to the group in the lawn chairs, make a huddle, and return to Detective Szymanski's car.

At that time, Detective Donaldson heard the takedown signal. He ordered Appellant and Defendant Roberson to put their hands up. Detective Donaldson saw Appellant throw "a small plastic bag that was later recovered that had crack cocaine in it . . . over his left shoulder." The bag landed eight to ten inches away on the other side of the chainlink fence. When Detective Donaldson retrieved the bag, he noted that it contained one large crack rock

-3-

and two small crack rocks. He estimated that it weighed about one gram and was worth between sixty to eighty-five dollars. The bag and the crack were placed into a cellophane evidence bag.

Defendant Roberson's purse was searched incident to her arrest. There was no cocaine inside. When Appellant was searched, authorities retrieved a bag containing leafy, plant-like material from his pants pocket. The marijuana weighed about a gram and a half. The twenty dollar bill was recovered "on the ground, in between the two chairs" between Appellant and Defendant Roberson. The authorities also recovered a black box containing crack and a crack pipe from Mr. White. This evidence was kept separate from the evidence seized from Appellant.

*State v. Gregory Lamour Justice*, No. M2008-02266-CCA-R3-CD, slip op. at 2-4 (Tenn. Crim. App. Mar. 10, 2010), *perm. app. denied* (Tenn. June 30, 2010).

At the post-conviction hearing, the Petitioner testified that counsel failed to communicate with him effectively. He said that there was a conflict between the officers' reported weight of the drugs and the Tennessee Bureau of Investigation's (TBI) reported weight. The officers' reports are not included in the record, but TBI Agent Cassandra Franklin testified at the trial about her findings. She said that during her first analysis of the evidence, there was no indication that the evidence was from multiple charges or defendants and that she tested only the first bag of white substance. She said the tests established that the substance was cocaine base, that it weighed more than one-half gram but less than twenty-six grams, and that the total weight of all the evidence was 17.4 grams. She said the procedure of testing the drug weight up to the statutory cutoffs was used by the TBI to test substances more efficiently. She said that when the evidence was returned to her on May 29, 2008, she tested each substance separately and established that the weight of the Petitioner's cocaine was 1.03 grams.

The Petitioner testified that counsel wrote him a letter informing him that the TBI reported 17.4 grams of drugs in this case and that the Petitioner based his defense on the inaccurate lab report from the TBI. He said counsel did not answer his questions about why the drugs were not retested or analyzed independently. He said that on the day of his trial, the TBI agent explained why she wrote the weight on the report but that it was too late for him to choose a different defense strategy. He said that before hearing from the TBI agent, his defense strategy was that it was not his intent to sell drugs, that no evidence showed he was selling drugs, and that the 17.4 grams were different drugs than what the officer found with him. He said that after hearing from the TBI agent, he and counsel realized 17.4 grams were not involved. He said counsel did not view the drug evidence until the day of the trial.

-4-

The Petitioner testified that he and counsel did not communicate about how to proceed with the case from the beginning. He said he asked the trial court to remove counsel from his case, complained about counsel, and wrote the Board of Professional Responsibility about the issues he had with counsel. He reviewed letters he received from counsel while incarcerated and explained his issues with them. He said counsel's December 13, 2007 letter stated that the court declined to remove counsel from the case and that the Petitioner had to choose whether to plead guilty, to testify, or to go to trial. He thought this was "unprofessional" because counsel was supposed to represent him and only left him those options without discussing his case. He said counsel's January 2, 2008 letter stated that because he participated in a drug transaction with a confidential informant, there was probable cause for the police to stop and frisk him. The Petitioner said, though, that no confidential informant was involved. He said that counsel's statement about a confidential informant affected his decision to take his case to trial because he knew he had a right to learn the identity of the confidential informant and cross-examine him at the trial. He learned from counsel's January 15, 2008 letter that the State could not confirm the 17.4 grams of evidence were all cocaine. He relaxed because he thought he would not be charged with possession of 17.4 grams. He said that counsel's April 15, 2008 letter discussed his option to plead guilty but that he did not want to plead guilty because he had a defense based on the information he was given. He said counsel pressured him to accept a plea agreement. Counsel's May 7, 2008 letter stated that counsel had not viewed the drugs and that although the State may make another plea offer before the trial, the offer was as good as the Petitioner could expect.

The Petitioner testified that he did not believe counsel appreciated his input and that he was expected to do the research and have his own answers. He said counsel did not accept his input during the trial regarding his best interests. He said that in a June 8, 2008 letter, after his trial but before his appeal, counsel was adamant about his admitting his guilt of the charges against him. He said that he knew the process and that an admission would have harmed him in the appellate courts.

The Petitioner testified that one month before the trial, counsel told him the State offered a plea agreement for two years and one month. He said that after the trial, he was told about additional offers that had been made but not communicated to him. He said that counsel told him "something about six years" on the day of the trial and that he asked counsel why the offer went from two years to six years. He said that counsel told him the State would not "go back down anymore" and that counsel did not discuss plea negotiations again.

Upon questioning by the trial court, the Petitioner testified that he did not accept the two-year, one-month offer because he was serving a sixteen-year sentence before the trial. He said he would "flatten" the sixteen-year sentence in 2009 without the additional two years

and one month. He said that he would have accepted the two-year offer if he had known about it because he still could have finished both sentences in 2009 with determinant release. He said, though, that a two-year, one-month sentence was not a determinant release sentence because of the additional month and that it would have required him to serve the remainder of the sixteen-year sentence before beginning the two-year, one-month sentence.

Upon further questioning by post-conviction counsel, the Petitioner testified that trial counsel told him about the two-year offer after the jury returned the verdicts. He stated that counsel said the State made a better offer of two years and that counsel told him to accept the offer. He said he told counsel that he had not received the offer. He said he received a letter from counsel after the trial stating that the Petitioner received a two-year offer from the State the morning of the trial but that the Petitioner rejected the offer. The Petitioner denied receiving the offer that morning.

On cross-examination, the Petitioner testified that he wanted counsel to investigate his case and not just tell him that his options were to testify, to go to trial, or to plead guilty. He said he wanted the drugs independently analyzed because it was his right, but he did not know if an independent examination would have contradicted the TBI report. He said that other than the independent analysis, he would have left the investigation to counsel. He said counsel would have known the drugs did not weigh 17.4 grams if counsel had seen them. He said he did not know if the drugs weighed more than one-half of a gram even though he had five previous cocaine possession convictions.

The Petitioner testified that although he did not intend to plead guilty before the trial because he was innocent, it may have been in his best interests to accept the two-year offer, if it had been communicated to him because of the difference in the amount of time he faced if convicted. After being directed to counsel's December 13, 2007 letter detailing the time the Petitioner could serve if convicted of the charges, the Petitioner said that counsel gave him "a lot of numbers" but that did not mean he believed counsel because counsel had detailed "a lot of things that weren't true." He agreed that counsel gave him the information but that he chose not to believe it.

The Petitioner testified that counsel did not communicate with him about the facts of his case. He said that counsel discussed information about his case in the letters but not the facts. He said counsel discussed the police officers involved in the case and their expected testimony. He said counsel told him the officers would testify that they saw the Petitioner in a group, that based on their training it appeared to be a drug deal, and that they saw the Petitioner throw a large bag of cocaine before his arrest.

Upon questioning by the trial court, the Petitioner testified that counsel was "throwing all these numbers out, you're facing 12 to 20 on this, 8 to 12 on this" and that counsel told him the court would "stack" his sentences for an effective thirty-four-year sentence. He said this was wrong because it did not happen. The court said that the possible sentence did not happen because it sentenced him to something different but that the longer sentence could have been imposed. The Petitioner responded that he did not see how he could have received a thirty-four-year sentence for possessing one gram of cocaine. The court explained that if the Petitioner was given the maximum sentence for each of his charges, the total would be thirty-four years. The Petitioner said that counsel told him he faced thirty-four years but that he was not charged with or sentenced to the maximum. He never agreed that the thirty-four-year sentence was an accurate calculation of the possible maximum sentence but said he understood he was facing a longer sentence than what he was last offered by the State. He said he did not know before the trial that the marijuana charge was a felony and assumed it was a misdemeanor. After reviewing counsel's December 13, 2007 letter, the Petitioner agreed that he was wrong in saying counsel never told him the marijuana charge was a felony because the letter stated the charge was for "felonious simple possession." He said, though, that he did not believe anything counsel wrote him because counsel told him "a lot of stuff" that was inaccurate.

On cross-examination, the Petitioner testified that counsel communicated several things related to his case but that those were "just formalities." He said that in his opinion, counsel did not complete the work required of an attorney. He said that he never claimed counsel did not communicate with him but that counsel was ineffective in defending him. He said counsel spoke with him but did not communicate the facts and ramifications that his case and its defense involved.

Counsel testified that he had been licensed to practice law in Tennessee since 2004 and that eighty to ninety percent of his practice was dedicated to criminal defense. He said that he was appointed in 2007 to represent the Petitioner. He said that at that time, he had been practicing a little more than three years and that the Petitioner's trial was probably his fourth jury trial. He said that after the Petitioner's parole was revoked, the Petitioner was incarcerated in Hardeman County, which was not a feasible location for face-to-face meetings. He said that they had courtroom "discussion dates" in which they communicated directly but that communication was primarily by mail. He said that before the case was set for trial, they had frequent face-to-face meetings but that after the case was set, he did not see the Petitioner until the weekend before the trial. He said that he communicated with the Petitioner by mail at least every two to four weeks before the trial. He said that he talked to the Petitioner about the State's discovery materials before setting the case for trial and that after the case was set, he had more in-depth conversations with the Petitioner.

Counsel testified that he and the Petitioner did not get along from the beginning and that some of the conversations they had in person were shorter than he wanted because of the animosity. He said that he took the time to explain in his letters the things he did not feel he had explained in person about the process, the State's discovery, and the State's intended evidence against the Petitioner. He said that letters were the primary way he and the Petitioner communicated because the in-person conversations were not as fruitful as he would have liked. He said that he was detailed in the letters about the case, that he wrote the Petitioner about the possible punishment the Petitioner faced if convicted at a trial, and that he explained some of the evidence the State intended to present. He said the Petitioner wrote letters asking questions. He said that they wrote frequently and that he tried to answer the Petitioner's questions.

Counsel testified that some of the Petitioner's questions concerned the recourse he would have because he did not want counsel to represent him. He said that on the day the trial court set the case for trial, the Petitioner asked the court to relieve counsel but that the court denied the Petitioner's request. He said that the Petitioner filed a complaint with the Board of Professional Responsibility, that the Board interpreted the complaint to involve a lack of communication between the Petitioner and counsel, and that he communicated additionally with the Petitioner. He said that the Petitioner's questions "were all over the map," that he tried to answer the questions, and that he told the Petitioner they were "kind of stuck with each other" and needed to prepare for a trial. He said that he asked the Petitioner if he would accept a misdemeanor plea offer, which was as low as the offer could possibly be, and that the Petitioner said, "No."

Counsel testified that he communicated the State's offers to the Petitioner in letters and in person. He said that in the fall of 2007, the State offered a two-year, one-month sentence to run consecutively to the sentence the Petitioner was serving. He said he thought the trial court might consider consecutive sentencing with the Petitioner's previous convictions. He said he told the Petitioner that by statute, the sentence he received would be consecutive to the sentence he was serving because of the parole violation. He did not recall telling the Petitioner that he had to plead guilty but did recall telling him that he had to decide whether to plead guilty and whether to testify at a trial.

Counsel testified that he told the Petitioner about the two-year, one-month offer. He said the prosecutor amended the State's offer to two years on the morning of the trial, which made the Petitioner eligible for determinate release. He said he remembered conveying the two-year offer to the Petitioner but did not remember the exact conversation because it was the morning of the trial with a lot happening. He said that the Petitioner did not accept the two-year offer, which was consistent with the position the Petitioner had always taken. He said that after the trial court ruled on a chain of custody issue concerning the cocaine, the

Petitioner expressed interest in pleading guilty. He said he remembered talking to the prosecutor about whether they could still negotiate but did not remember if the prosecutor made a six-year offer.

Counsel testified that the TBI report regarding the drugs was confusing. He said it showed that one gram of material was tested and that 17.4 grams of material were untested. He said the Petitioner received a copy of the report and asked questions. He said that he did not know the answers but that the TBI agent explained the numbers to him by telephone in January 2008. He stated the agent said that the TBI weighed the amount of the substance up to the different statutory provision's weight and that she stopped analyzing the substance once she reached one gram but knew she would not reach twenty-six grams. He said the TBI agent did not tell him there were substances other than cocaine in the evidence bag. He stated that people other than the Petitioner and his codefendants were arrested in the "buy bust operations" and that the police placed all the evidence under one complaint number and in the same evidence bag. He said that the others were never codefendants in the case but that the evidence was retained in the same bag. He said he learned later that the 17.4 grams included the other people's cocaine and that there was never 17.4 grams in the Petitioner's case.

Counsel testified that the confusion about the amount of cocaine led him and the Petitioner to present a chain of custody defense but that the trial and appellate courts concluded there was no issue. He said he thought he hurt the Petitioner's chances at the trial because he asked the prosecutor for a letter allowing him to go to the property room. He said that he asked for the letter within thirty days of the trial and that he asked the people in the property room when the evidence was sent to the TBI and what was tested. He said that it became clear to him that the State had not tested all the substances in the bag and that the cocaine in the Petitioner's case was not tested. He thought the prosecutor had all the substances retested after his investigation and three or four days before the trial. He said that he received a fax on the Friday or the weekend before the trial with new information and that he could not have presented the information to the Petitioner sooner than he did. He said that his investigation efforts in the property room hurt the Petitioner because it drew the State's attention to the issue. He said that he filed a motion *in limine* to exclude the report as late discovery but that the motion was denied. He said that he would have liked to have had a clearer understanding earlier but that he felt he did what he could to understand. He said that although it was confusing, the Petitioner could have taken the plea offer on the morning of the trial after everything became clear.

On cross-examination, counsel testified that he did not remember exactly when he viewed the drugs in the property room but that it was three to four weeks before the trial, sometime in May 2008. He said that he did not recall if he wrote the Petitioner a letter about

his investigation in the property room but that he visited the Petitioner the weekend before the trial and told him he went to the property room. The trial court reviewed counsel's appointed counsel claims sheet and asked counsel if the claims sheet was correct in showing that counsel went to the property room on May 20 and went to visit the Petitioner on May 31. He agreed that he did not have any notes from his discussion with the Petitioner the weekend before the trial.

Counsel testified that the Petitioner's case was his first felony drug jury trial and the first time he encountered issues regarding the chain of custody of drugs. He said he had other cases that involved evidence in the property room and chain of custody issues. He said he felt the chain of custody issue was the primary defense because there was a fourth person involved who was not a codefendant and all the property was logged under the same complaint number. He said that it would have been beneficial to file a motion *in limine* to determine before the trial if the evidence would be admitted but that based on his then-limited experience and advice from other attorneys, he did not think the timing was right to file the motion until the State moved to have the evidence admitted. He said he did not remember discussing the filing of a pretrial motion with the Petitioner. He said he told the Petitioner that the chain of custody issue was the best defense at the trial and that the offer he received from the State was "extremely favorable." He said he told the Petitioner that the State's case must be weak for the district attorney to have offered a two-year plea agreement in spite of his record and his being on parole for six weeks but that this did not guarantee a favorable outcome at the trial. Counsel said that he was aware of the Petitioner's argument that his indictment and jury verdict were defective and that he did not raise the issue during the trial or on appeal.

In denying the petition for post-conviction relief, the trial court credited counsel's testimony. The court noted that it read the letters counsel sent to the Petitioner and found that counsel "repeatedly and accurately" informed the Petitioner of the charges against him and the possible sentences he faced if found guilty at the trial. The court found that counsel told the Petitioner about the two-year, one-month plea offer in his letters and that counsel communicated to the Petitioner the two-year plea offer made at the trial but that the Petitioner would not consider pleading guilty to a misdemeanor. The court found that the Petitioner's "unfortunate and misguided" decision not to believe counsel did not mean that he was uninformed or that counsel provided ineffective assistance. The court found that counsel's letters to the Petitioner discussed possible trial strategies, methods for cross-examining the State's witnesses, and substantive criminal law relevant to the case. The court found that the Petitioner made a "well-informed" decision when he decided to reject all plea offers and proceed to a jury trial and that no merit existed regarding the Petitioner's issue of counsel's failing to effectively communicate with him before the trial. The court also found no merit to the Petitioner's issue regarding counsel's failing to investigate properly the weight of the

drugs and credited counsel's testimony, which established that he investigated the issues and kept the Petitioner well-informed of his efforts. The court found that the Petitioner was charged and found guilty of possession with intent to "sell *or* deliver" and that an election of offenses was not required for that charge. This appeal followed.

The burden in a post-conviction proceeding is on the petitioner to prove his grounds for relief by clear and convincing evidence. T.C.A. § 40-30-110(f) (2012). On appeal, we are bound by the trial court's findings of fact unless we conclude that the evidence in the record preponderates against those findings. *Fields v. State*, 40 S.W.3d 450, 456-57 (Tenn. 2001). Because they relate to mixed questions of law and fact, we review the trial court's conclusions as to whether counsel's performance was deficient and whether that deficiency was prejudicial under a de novo standard with no presumption of correctness. *Fields*, 40 S.W.3d at 457. Post-conviction relief may only be given if a conviction or sentence is void or voidable because of a violation of a constitutional right. T.C.A. § 40-30-103 (2012).

**I**

The Petitioner contends that his conviction must be vacated because a count in his indictment contains duplicitous charges against him. The Petitioner argues that the indictment charges him with two separate crimes, possession with the intent to sell and possession with the intent to deliver. The State contends that the issue standing alone is waived because claims of a defective indictment must be addressed before the trial or are waived and that the issue is waived as a post-conviction claim because it could have been raised in the trial court.

The statutory and constitutional requirements for an indictment are satisfied when the indictment fulfills the "overriding purpose of notice to the accused." State v. Hammonds, 30 S.W.3d 294, 300 (Tenn. 2000). The only defects which may be challenged at any time are those that create a lack of subject matter jurisdiction in the court and those that show the indictment failed to charge an offense. *See* Tenn. R. Crim. P. 12(b)(2)(B); *State v. Nixon*, 977 S.W.2d 119, 120-21 (Tenn. Crim. App. 1997). A duplicitous indictment does not remove jurisdiction from the trial court, and the indictment in this case charges all the elements of an offense. *See State v. Lindsey*, 208 S.W.3d 432, 438-439 (Tenn. Crim. App. 2006). Nothing in the record shows that the Petitioner objected to a defect in the indictment before the trial, and he did not address the issue during the appeal of his convictions. The Petitioner first addressed the issue in his amended petition for post-conviction relief. *See* T.C.A. § 40-30-106(g) (2010). Because the Petitioner failed to raise the issue before the trial, the issue is waived.

**II**

The Petitioner contends that his felonious possession of one-half gram or more of a controlled substance convictions must be vacated because he was denied his constitutional right to a trial by a jury and jury unanimity. He argues that the indictment, verdict, and judgment violated his constitutional right to a trial by a jury and jury unanimity because the jury verdict form does not elect between the two offenses charged, possession with the intent to sell and possession with the intent to deliver. He argues that the verdict form says "possession with intent to deliver or sell .5 grams or more," that the sentencing order says "Possession with Intent to Deliver or Sell over .5 grams or more of cocaine," that the judgment says only "Possession of Cocaine Over .5 Grams w/ Intent," and that none of these is an effective election. He argues that the State's failure to identify the crime charged is fatal to his conviction and that his post-conviction petition should be granted. The State contends that because the issue relies on the indictment being defective, the issue is waived. In the alternative, the State contends there was no risk of a "less-than-unanimous verdict" because the indictment charged one offense.

When only a single transaction is at issue, an election of offenses is not necessary. *See State v. Adams,* 24 S.W.3d 289, 294 (Tenn. 2000) ("When the evidence does not establish multiple offenses have been committed, . . . the need to make an election never arises."). There are no jury unanimity concerns when the jury considers proof of only one offense. *See Arthur Lee Taylor v. State*, No. W2011-00027-CCA-R3-PC, slip op. at 9 (Tenn. Crim. App. Feb. 7, 2012), *perm. app. denied* (Tenn. May 16, 2012), *cert. denied*, 133 S. Ct. 382 (2012). When a single crime may be committed with different intents, jury unanimity is not required as to the particular means or intent.

> Where the intent with which . . . an act is done [is] essential to the commission of the offense, and the offense may be committed with different intents . . . if the jury is satisfied that the act was committed with one (1) of the intents . . . the jury shall convict, although uncertain as to which of the intents charged existed[.]

T.C.A. § 40-18-112 (2012). Because the record shows the Petitioner participated in a single drug transaction and possessed one bag of cocaine, the State was not required to elect the particular intent with which he possessed the drugs.

"It is an offense for a defendant to knowingly: (1) Manufacture a controlled substance; (2) Deliver a controlled substance; (3) Sell a controlled substance; or (4) Possess a controlled substance with the intent to manufacture, deliver, or sell the controlled substances." T.C.A. § 39-17-417(a) (2010). The count of the indictment at issue charged that the Petitioner

-12-

"knowingly did possess with intent to sell or deliver .5 grams or more of a substance containing cocaine," an offense under Code section 39-17-417(a)(4). This offense can be committed with any of the three proscribed intents, and if the evidence satisfies one of the intents charged, the jury can convict although uncertain of which intent existed. *See id.* § 40-18-112; *Arthur Lee Taylor*, slip op. at 7.

The Petitioner was not charged with delivery or sale of cocaine under Code section 39-17-417(a)(2) and (3). *See State v. Angela E. Isabell*, No. M2002-00584-CCA-R3-CD, slip op. at 3-4 (Tenn. Crim. App. June 27, 2003) (concluding that an indictment or presentment should not charge both delivery and sale in the same count). Instead, the Petitioner was charged with *possession* with the intent to sell or deliver, an offense in its own subpart. *See* T.CA. § 39-17-417(a)(4); *see also State v. John Tyree Lytle*, No. E2003-01119-CCA-R3-CD, slip op. at 4 (Tenn. Crim. App. May 3, 2004) (concluding there was no plain error with jury unanimity when the defendant was not charged with the delivery and sale of cocaine, which are listed in two separate subparts of the statute, but charged only as to subpart (4), which includes possession with intent either to "deliver or sell"). The indictment charged the Petitioner with the crime of possession, not with the separate crimes of delivery and sale, and listed two different intents. *See Arthur Lee Taylor*, slip op. at 7. We see no constitutional infirmity in the Petitioner's indictment and conclude that the jury verdict was unanimous. The Petitioner is not entitled to relief on this issue.

## III

The Petitioner contends that he was denied the effective assistance of counsel. He argues that counsel failed to object to the duplicitous indictment before the trial or on the appeal, that counsel failed to communicate effectively with him before the trial, and that counsel failed to investigate properly before the trial. He argues that the cumulative effect of counsel's errors requires that he be granted a new trial. The State contends that the Petitioner received the effective assistance of counsel. We agree with the State.

Under the Sixth Amendment, when a claim of ineffective assistance of counsel is made, the burden is on the Petitioner to show (1) that counsel's performance was deficient and (2) that the deficiency was prejudicial. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see Lockhart v. Fretwell*, 506 U.S. 364, 368-72 (1993). In other words, a showing that counsel's performance fell below a reasonable standard is not enough because the petitioner must also show that but for the substandard performance, there is a "reasonable probability that . . . the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. The *Strickland* standard has been applied to the right to counsel under article I, section 9 of the Tennessee Constitution. *State v. Melson*, 772 S.W.2d 417, 419 n.2 (Tenn. 1989).

In *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975), our supreme court decided that attorneys should be held to the general standard of whether the services rendered were within the range of competence demanded of attorneys in criminal cases. Further, the court stated that the range of competence was to be measured by the duties and criteria set forth in *Beasley v. United States*, 491 F.2d 687, 696 (6th Cir. 1974), and *United States v. DeCoster*, 487 F.2d 1197, 1202-04 (D.C. Cir. 1973). *See Baxter*, 523 S.W.2d at 936. Also, in reviewing counsel's conduct, a "fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689. "Thus, the fact that a particular strategy or tactic failed or even hurt the defense does not, alone, support a claim of ineffective assistance." *Cooper v. State*, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992). Deference is made to trial strategy or tactical choices if they are informed ones based upon adequate preparation. *Hellard v. State*, 629 S.W.2d 4, 9 (Tenn. 1982); *see DeCoster*, 487 F.2d at 1201.

A petitioner will only prevail on a claim of ineffective assistance of counsel after satisfying both prongs of the *Strickland* test. *Henley v. State*, 960 S.W.2d 572, 580 (Tenn. 1997). The performance prong requires a petitioner raising a claim of ineffectiveness to show that counsel's representation fell below an objective standard of reasonableness or "outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. The prejudice prong requires a petitioner to demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A reasonable probability means a "probability sufficient to undermine confidence in the outcome." *Id.*

## A. Indictment and Jury Unanimity

The Petitioner asserts that counsel was ineffective because he failed to object to a duplicitous indictment before the trial or on appeal. The State counters that the indictment charged one offense and that counsel was not deficient for failing to object to the valid indictment. We agree with the State.

As previously stated, the indictment charged that the Petitioner "knowingly did *possess* with intent to sell or deliver .5 grams or more of a substance containing cocaine." (emphasis added). The Petitioner was not charged with the two crimes of delivery and sale of cocaine but was charged with the separate crime of possession with the intent to sell or deliver. *See* T.C.A. § 39-17-417(a)(2), (3), (4); *see also John Tyree Lytle*, slip op. at 4; *Angela E. Isabell*, slip op. at 3-4. We have concluded that the indictment charged the Petitioner with one offense. The record shows the Petitioner possessed one bag of cocaine.

-14-

Jury unanimity concerns are not implicated when the jury is considering proof of only one offense. *See Arthur Lee Taylor*, slip op. at 9. When the single crime may be committed by different means, jury unanimity is not required as to the particular means or intent. T.C.A. § 40-18-112 (2012). Because the indictment did not deny the Petitioner his right to notice of the crime charged or jury unanimity, the Petitioner has not shown counsel was deficient in failing to object to the valid indictment or that he was prejudiced. The Petitioner is not entitled to relief on this issue.

## B. Communication

The Petitioner asserts that counsel failed to communicate with him before the trial. The State counters that the evidence does not preponderate against the trial court's finding that counsel adequately communicated with the Petitioner. We agree with the State.

The letters counsel wrote the Petitioner discussed possible trial strategies, methods for cross-examining the State's witnesses, and relevant substantive criminal law. The trial court credited counsel's testimony and found that counsel communicated the charges against the Petitioner, the possible sentences he faced, and the State's plea offers. The court found that the Petitioner's decision not to believe counsel did not mean he was uninformed and that he was informed when he decided to reject all plea offers. Although the Petitioner argues that he was prejudiced by counsel's failure to communicate the State's two-year offer on the day of the trial, the court credited counsel's testimony that counsel communicated the offer. The evidence does not preponderate against the court's factual findings. The Petitioner is not entitled to relief on this issue.

## C. Investigation

The Petitioner asserts that counsel failed to investigate properly because counsel did not review the physical evidence against him before the trial. The State counters that counsel investigated the case and was not deficient. We agree with the State.

Counsel testified that the TBI report regarding the weight of the drugs showed that the TBI tested one gram of material and that 17.4 grams of material was untested. In January 2008, counsel talked to the TBI agent, who explained the numbers but did not tell him substances other than cocaine were in the evidence bag. He viewed the evidence in the property room in May 2008, a few weeks before the trial, and the prosecutor had all the substances retested three or four days before the trial. He received a fax with the new information the weekend before the trial and presented the information to the Petitioner when they met the same weekend. The motion in limine to exclude the report as late discovery was denied. He told the Petitioner he went to the property room and that the chain of custody

issue was the best defense at the trial. Counsel investigated and made tactical and strategic decisions based on his investigation and communications with the Petitioner. The trial court credited counsel's testimony establishing that he investigated the issue about the weight of the drugs and kept the Petitioner well-informed of his efforts. The evidence does not preponderate against the court's factual findings. The Petitioner is not entitled to relief on this issue.

### D. Cumulative Error

The Petitioner asserts he should be granted a new trial because of counsel's cumulative errors. The State argues that the record does not show any constitutional deficiencies in counsel's performance and that the Petitioner is not entitled to relief. We agree with the State.

The cumulative error doctrine stands for the proposition that "multiple errors committed in the trial proceedings, each of which in isolation constitutes mere harmless error, but which when aggregated, have a cumulative effect on the proceedings so great as to require reversal in order to preserve a defendant's right to a fair trial." *State v. Hester*, 324 S.W.3d 1, 76-77 (Tenn. 2010) (internal citations omitted).

We have concluded that counsel's performance was not deficient. We conclude that counsel's performance did not cumulatively prejudice the Petitioner in his right to a fair proceeding or call into question the reliability of the jury's verdict. The record shows that counsel investigated and prepared adequately for the Petitioner's trial.

The Petitioner has failed to establish that he is entitled to relief. In consideration of the foregoing and the record as a whole, the judgment of the trial court is affirmed.

_____
JOSEPH M. TIPTON,  PRESIDING JUDGE